STATE OF NEBRASKA, APPELLEE, v. ALLEN REED, APPELLANT.

272 N. W. 2d 759

Filed December 13, 1978. No. 42001.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and RIST, District Judge.

CLINTON, J.

The defendant, Allen Reed, was found guilty by a jury in the District Court for Douglas County of maliciously shooting Russell Woodward, an Omaha, Nebraska police officer, with intent to kill, wound, or maim and was sentenced to a term of not less than 12 nor more than 15 years in the Nebraska Penal and Correctional Complex. On this appeal he assigns and argues the following errors: (1) The court erred in permitting a witness, over proper objection that the testimony was hearsay, to testify to a statement made within a minute or two before the shooting by a young child to an investigating officer at the scene to the effect that the defendant Reed knew that the police officers were outside Reed's apartment and did not intend to come out; and (2) the court erred in admitting testimony of prior incidents in which the defendant allegedly shot at one Cooper, whose complaint brought about the police investigation which led to the shooting of Woodward. We affirm.

The State's evidence indicated the following sequence of events. On July 20, 1977, at about 6:37 p.m., Woodward and other police officers responded to the complaint of James Cooper that the defendant

had threatened him with a shotgun during an argument. The two were neighbors, and Cooper was in his own yard and Reed in his during the argument. When the threat was made, Cooper ran into his own house and called the police. On one previous occasion, Reed had shot at Cooper; and the police, including the victim Woodward and the officer who regularly worked with him, had investigated that incident. These two officers were among those who responded to Cooper's complaint on July 20th.

Woodward and his partner went to an Omaha residence at 4615 North 37th Street which they had been told was Reed's address. The house at that location contained two apartments numbered 1 and 2. The front doors of the two apartments were adjacent to each other and both were served by a common porch. The two officers rapped at the door of apartment 1, and a woman answered the door. They asked where Reed lived. The woman at first said she did not know but then, by pointing, indicated that Reed lived in the second apartment. A small child, who apparently overheard the request for information and who was either on the porch or in the yard nearby, spontaneously volunteered the information that Reed was in apartment 2, knew the police were there, and did not intend to come out. Circumstantial evidence rather clearly indicates that the child making the statement was the 6-year-old son of the woman with whom the defendant lived and who at that time was present with him in apartment 2.

The officers then rapped loudly on the door of apartment 2, called Reed by name, identified themselves as officers, and stated that they wished to talk to him. This process was repeated about three times. They got no response and heard no noise of any kind coming from the apartment. As a consequence of the pounding by the officer on the door, it opened slightly. One of the officers at the door then

advised the police sergeant in charge of the operation, who had stationed himself at the back door of apartment 2, of the fact that the door had opened. The sergeant told the officers to enter the apartment. They were about to do so when Reed, who was just inside the door, fired a .20 gauge shotgun through the glass window in the upper part of the door and severely wounded Woodward, who fell from the porch. The other officers took cover, and one of them fired a bullet through the window of the door. In a brief time, the defendant came out and surrendered. The officers' statement that they had identified themselves in the manner indicated was corroborated by the occupant of apartment 1 and by a neighbor who lived across the street. The latter also witnessed the wounding of officer Woodward.

The shotgun which Reed used, together with a box of shells and an empty shotgun shell, were found inside the apartment. The evidence indicated that the trigger of the shotgun did not function and that the gun had to be discharged by pulling back the hammer and then releasing it. The hole in the windowpane of the door made by the shotgun blast was about the size of a fist, indicating that, when fired, the muzzle of the gun was quite close to the door. Particles of glass were found in Woodward's wounds. One of the two drapes which hung over the door of the window bore powder marks and was partially shredded by the shot.

The evidence indicates that there was enmity between Reed and Cooper arising out of the fact that Cooper was then living with the woman who had previously lived with Reed.

Cooper testified as to the previous shooting incident of July 14th and his story was corroborated by photographic evidence of the marks of shotgun pellets in the wood exterior of a building where the shooting is said to have occurred. His version of the incident of July 20th was that he was working in the

garden of his home and Reed came toward him, berated him, and threatened to shoot him with the shotgun Reed held in his hands. Cooper told Reed he was going to call the police, ran into his home, and did so.

Reed did not testify in his own behalf. However, a tape recording of a statement which he gave to police after his arrest was played to the jury with the defendant's consent. He thus had the advantage of having his version of the incident presented to the jury without being subject to cross-examination. His version was that, on four previous occasions, Cooper had shot at Reed in various places in the city of Omaha. As to the incident of July 20th, Reed said at the time of the argument on July 20th, each man was in his own yard. This portion of Reed's story thus conformed to Cooper's. Reed then said that, during the argument, Cooper went into his own house to get a gun. At that time, a cousin of Cooper's was present. Reed, accompanied by Cooper's cousin, went to the door of Reed's apartment and there had a conversation in which Reed stated he wanted no trouble with Cooper and the cousin indicated that he would intervene. The cousin did not testify. Reed did not know the name of Cooper's cousin and denied hearing Cooper say that he was going to call the police.

Reed stated that, after he went inside his apartment, someone began kicking on both doors of his apartment. The implication of his testimony was that he thought it was Cooper coming to shoot him. Reed then picked up his shotgun and aimed it at the window of the door. He said he did not then intend to shoot; the gun just went off accidentally, apparently when he pulled back the hammer. After the shooting, he saw the police car and realized that there was more than one person out there. He then walked out the front door and was arrested. Reed claimed he did not know the man outside the door

was a police officer when he shot. He heard nothing except the pounding on the door. The reason he could not hear was because of the noise made by the television set and a fan. He could see only the outline of the man outside the door and could not tell it was a policeman.

Reed claimed two defenses to the charge. First was the right of self-defense. Second, although he acknowledges that he picked up the gun and pointed it at the figure on the other side of the door, he asserts that he did not purposely fire the weapon but that it went off accidentally. The instructions given by the court placed on the State the burden of proving beyond a reasonable doubt the shooting was intentional and done with the requisite intent. The court gave also a self-defense instruction to which no objection is made. This instruction placed on the State the burden of proving beyond a reasonable doubt that the shooting was not in self-defense.

We now turn to the assignments of error. The portion of the statement of the child reciting that Reed knew of the presence of the police and did not intend to come out was, if admitted for the purpose of showing the truth of its contents, on its face hearsay and did contradict Reed's claim that he thought it was Cooper who was attempting to break in. Also, the statement inferentially contradicted Reed's claim of fear for his life, for he did not assert he had anything to fear from police action. The boy's statement was offered by the State on the basis that it tended to explain the conduct of the police in approaching apartment 2. However, the part of the statement indicating that Reed was in the apartment was sufficient to explain that action. The portion of the statement to which objection was made — the statements as to Reed's knowledge and state of mind — did not need to be placed before the jury to explain police conduct and, as a practical matter, was likely to be considered for its truth by the jurors

despite the trial court's cautionary instruction that they should not consider it for that purpose.

Two possible grounds of admissibility present themselves. First: Was the statement admissible under the excited utterance exception to the hearsay rule? § 27-803 (1), R. R. S. 1943. Second: Was the statement admissible under the provisions of section 27-803 (22), R. R. S. 1943, because of "circumstantial guarantees of trustworthiness" equivalent to those which permit the admission of hearsay statements under other exceptions to the hearsay rule?

The statement clearly did not qualify as an excited utterance because it was not made under the stress of a startling event or condition. To qualify as an excited utterance, the following must exist: (1) There must have been a startling event. Hamilton v. Huebner, 146 Neb. 320, 19 N. W. 2d 552. (2) The statement must relate to the event. Hamilton v. Huebner, *supra*. (3) The statement must have been made by the declarant while under the stress of the exciting event. Roh v. Opocensky, 126 Neb. 518, 253 N. W. 680; Callahan v. Prewitt, 141 Neb. 243, 3 N. W. 2d 435. In this case, when the statement was made no startling event had yet occurred. The child's statement was made as a spontaneous statement arising from having overheard a request for information directed to the lady in apartment 1. There is no showing that the statement was the consequence of excitement.

Section 27-803 (22), R. R. S. 1943, provides: "A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (a) the statement is offered as evidence of a material fact, (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purpose of these rules and the interests of justice will

best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.''

It appears that the child's statement had circumstantial guarantees of trustworthiness. It was, if the testimony of the officers is to be believed, clearly a spontaneous statement made at the time of the event. The circumstantial proof indicates that it was probably made of personal knowledge since the child was an occupant of apartment 2 in which Reed lived. It was, in our judgment, the type of statement which the court could have admitted under section 27-803 (22), R. R. S. 1943. See, Sullivan v. State, 58 Neb. 796, 79 N. W. 721; McCormick v. State, 66 Neb. 337, 92 N. W. 606; Collins v. State, 46 Neb. 37, 64 N. W. 432; Bowers v. Kugler, 140 Neb. 684, 1 N. W. 2d 299. However, there was no compliance with the conditions laid down by section 27-803 (22), R. R. S. 1943, which are conditions precedent to admission. The court made no determination that the circumstances described in (i), (ii), and (iii) of section 27-804 (2) (e), R. R. S. 1943, were met. Neither does it affirmatively appear that notice of intention to use the statement was timely given to the defendant by the State. We therefore find for the reasons indicated that the court erred in overruling the objection. However, we also conclude that the error was not so prejudicially erroneous as to require a new trial.

A careful reading of the evidence and a careful hearing of the defendant's statement convinces us that the jury's decision did not turn upon the child's statement as to the defendant's knowledge and state of mind. We are convinced that the jury based its decision upon a weighing of Cooper's version of the

circumstances that led to the incident and the officers' version of their efforts to identify themselves against Reed's statement that he heard no words or calls and his version of the argument with Cooper. The following significant factors would, we believe, weigh far more heavily with the jury than the boy's statement which the court instructed the jury to disregard. The jury had to determine whether Reed's alleged fear for his safety was reasonable. Cooper's version was verified by the undisputed fact that he did call the police and they responded. The jury must have believed this rather than Reed's claim that Cooper had gone to get a gun. To find as it did, the jury also had to disbelieve Reed's contention that he did not know it was the police who were at the door. Reed admits the gun was very close to the door, but he nevertheless testified he could not hear the officers speaking although the woman in apartment 1 who had retreated to the far bedroom and a neighbor across the street clearly heard the officers identify themselves. Clearly, there was strong evidence other than the hearsay statement upon which a jury could base its decision to reject Reed's version of the shooting. We hold, therefore, there was no prejudicial error in the admission of the boy's statement.

The defendant's second assignment of error is clearly without merit. Section 27-404 (2), R. R. S. 1943, provides in part: "(2) Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In State v. Hoffmeyer, 187 Neb. 701, 193 N. W. 2d 760, we said that evidence of other crimes, wrongs, or acts is admissible to show intent and lack of mistake or accident. That statement fits the evidence in this case exactly.

AFFIRMED.

BOSLAUGH, J., concurs in the result.