THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN BITLER, Defendant-Appellant.
Third District No. 3—85—0607

Opinion filed August 21, 1986.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Spencer, State's Attorney, of Morrison (Gerry R. Arnold, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant, Steven Bitler, was charged with two counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse involving two victims, both minor female children. Following a jury trial, the defendant was found guilty on all counts. Subsequently, the trial court sentenced the defendant to two 12-year concurrent sentences on the aggravated-criminal-sexual-assault convictions. The defendant appeals, contending that the trial court erred in allowing the mother of the victims to testify as to certain inculpatory statements made to her by the victims. We affirm.

The relevant facts were established at the trial. In February and March of 1985, the defendant lived in Fulton. He and his sister lived next door to Laura Steen, the mother of two daughters, five-year-old J.A. and three-year-old M.K. (the victims). She also had a son J.S., who was nine years old. Laura had known the defendant, through his sister, for about 10 to 12 years. The defendant babysat for Laura four or five times during this period.

In March of 1985, the victims began to complain of pain in their vaginal areas. On March 29, Laura took the victims to Dr. Richard Londo. Following an examination, the doctor concluded that their condition was an irritation caused not by an infection but rather by a mechanical factor such as rubbing.

In April of 1985, Laura and her children moved into a house in Albany with a friend, Doreen Van Campen, and her three-year-old daughter. Because the defendant's sister had expelled the defendant from her apartment, Laura and Doreen allowed the defendant to stay with them temporarily.

Between April 8 and April 16, the defendant babysat four times for Laura's and Doreen's children. Shortly after midnight on April 15, 1985, J.S. was awakened by what he thought was the defendant's voice whispering in the victims' bedroom directly below his. Looking through a floor register to the victims' room, J.S. saw a moving light which appeared to be a flashlight. J.S. woke his mother and told her what he had seen. Laura looked from her room, but could neither see light coming through the register nor hear sounds coming from downstairs.

On the night of April 15, after the victims were in bed asleep, Laura and Doreen left the house at approximately 10:45 p.m. The

defendant remained at home to babysit the women's children. They stopped at a bar for a drink and then went to Laura's sister's home. When Doreen mentioned that her daughter, who slept in the same bedroom as the victims, had complained about pain in her vaginal area, Laura became suspicious that someone may have been molesting their children. Laura and Doreen returned home between 11:30 p.m. and 11:45 p.m. and woke the victims.

Laura first woke J.A. and asked her daughter whether anyone had "messed with her coochie [*i.e.*, her vagina] or pulled down her panties." J.A. responded that the defendant had. When Laura asked what the defendant had done, J.A. stated that the defendant had put his finger in her "coochie" and made it wet.

Laura then woke M.K., who slept in the same room as J.A. Laura asked M.K. if anyone had been "playing with her coochie." M.K. responded that the defendant had and told Laura that he put his finger in her vagina and made it wet. M.K. also stated that the defendant came every night with a flashlight and got in bed under the covers with her. The next day, April 16, the defendant was arrested.

At the trial, the victims were found to be incompetent to testify. When the State began to question Laura as to the statements made to her by the victims, the defense objected and argued extensively that her testimony about her daughters' statements would be inadmissible as hearsay. The State argued, and the trial court agreed, that the victims' statements were admissible under the spontaneous-declaration exception to the hearsay rule. Following his conviction, the defendant brings this appeal. The defendant's sole issue on appeal is whether the trial court erred in admitting the victims' statements under the spontaneous-declaration exception to the hearsay rule.

■■ At the outset, the State argues that because the defendant did not raise the spontaneous-declaration issue in a post-trial motion, the defendant has waived this issue on appeal. Actually, the defendant failed to file any post-trial motion. Generally, failure to file a post-trial motion waives all issues on appeal. (*People v. Thiel* (1981), 102 Ill. App. 3d 28, 429 N.E.2d 565.) However, an examination of the trial record reveals that the issue of the admissibility of the victims' statements was timely objected to and well argued before the trial court. Thus, we find that our addressing the issue on appeal will not violate the spirit of the waiver rule. See *People v. Amos* (1985), 140 Ill. App. 3d 14, 488 N.E.2d 290.

The defendant's argument is three pronged. First, the defendant contends that the victims' statements were not spontaneous declarations because they were made an unknown length of time after the

offense occurred. Second, the defendant contends the statements were not spontaneous because they were made in response to specific questions. Third, the defendant argues that the statements were not made spontaneously as a result of the startling nature of the offense but rather were made as a result of the victims' being shaken awake from a sound sleep and then questioned.

■ To bring a statement within the spontaneous-declaration exception to the hearsay rule, three factors are necessary: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) an absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) The trial court has considerable discretion in determining whether a statement is admissible as a spontaneous declaration; and its decision will not be reversed absent an abuse of that discretion. *People v. Washington* (1984), 127 Ill. App. 3d 365, 468 N.E.2d 1285.

In the first prong of his argument, the defendant claims that the offense could not have occurred on the night of April 15 because Laura was gone for less than one hour and this was too short a time for the victims to fall into a sound sleep after being assaulted by the defendant. He argues that the offense, if it occurred, was committed 24 hours earlier, and that such a time lapse weighs against the victims' statements being spontaneous.

■ Elapsed time alone does not control the admissibility of a statement as a spontaneous declaration. The critical factor is the opportunity to fabricate. (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 434 N.E.2d 395.) The trial court must look to the surrounding circumstances to determine whether there was an opportunity for reflection and invention. *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.

Illinois courts have recognized that special circumstances exist concerning the motivations behind the statements of very young children. The reason that their statements are admitted is that it is unlikely that a child of tender years will have any reason to fabricate stories of sexual abuse. (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912; *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.) In Wisconsin, the courts have noted that the stress of a sexual assault upon a child will remain with the child long after it occurred, and that the child's statements will be unfabricated for three reasons: (1) the child is apt to repress the incident; (2) it is often unlikely the child will discuss such a stressful incident with anyone but the mother; and (3) the characteristics of young children work

to produce declarations free of conscious fabrication for a longer period after the incident than adults. *State v. Padilla* (Wis. App. 1982), 110 Wis. 2d 414, 329 N.W.2d 263.

■ We agree here, as we did in *Theis*, with the *Padilla* court's analysis; and we find that the victims had neither the time nor the opportunity to fabricate the statements, even assuming, *arguendo*, that the defendant molested the victims 24 hours prior to the relevant statements. In so finding, we note that it is unlikely that a five-year-old or three-year-old girl either would know that manipulation of her vaginal area would result in secretions or would be able to fabricate in 24 hours a story that a man placed his finger in her vagina and caused it to be wet.

In rejecting the defendant's argument we also note that in the instant case, unlike in *People v. Harris* (1985), 134 Ill. App. 3d 705, 480 N.E.2d 1189, and *People v. Van Scyoc* (1982), 108 Ill. App. 3d 339, 439 N.E.2d 95, upon which the defendant relies, the relevant statements were made by occurrence witnesses, not by victims. As noted by the court in *Van Scyoc*, victims are more likely to remain startled for a longer period of time than are mere witnesses. *People v. Van Scyoc* (1982), 108 Ill. App. 3d 339, 439 N.E.2d 95.

■ In the second prong of his argument, the defendant argues that the victims' statements could not have been spontaneous because they were made in response to specific questions. We observe, however, that statements made in response to detailed inquiries which probe for the existence of specific criminal activity may be spontaneous. (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912; *People v. Grover* (1983), 116 Ill. App. 3d 116, 451 N.E.2d 587.) Here, the fact that Laura asked her daughters specific questions regarding their molestation did not destroy the spontaneity of the victims' responses.

■ In the third prong of his argument, the defendant argues that the victims' statements were not made under the stress caused by the excitement of the molestation, but were made under the victims' stress from being suddenly awakened. The defendant states that there is no evidence that the victims displayed any anxiety during the day of April 15, but rather the evidence shows that they appeared to be calm and, in fact, went to sleep with no problems that night. If there was any excitement, the defendant asserts, it was caused by Laura's shaking the girls awake and questioning them. Therefore, the defendant concludes, the victims' responses were not caused spontaneously by the defendant's alleged actions.

The defendant's assertion is contradicted by the evidence. On

April 14, the day before the offense was committed, when Laura was about to leave her children with the defendant, J.A. began to cry uncharacteristically and stated that she did not want to be left with the defendant. We agree with the State that the stress caused by the defendant's acts would have lingered long after the acts themselves were committed. (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912.) Any excitement caused by Laura's waking the victims would be dwarfed by the victims' anxiety caused by the defendant's acts.

Based on the foregoing, we find that the victims' statements were spontaneous declarations, and that the trial court correctly admitted them as such. We therefore affirm the judgment of the circuit court of Whiteside County.

Affirmed.

HEIPLE and STOUDER, JJ., concur.