IN RE INTEREST OF R.A. AND V.A., CHILDREN UNDER 18 YEARS OF
AGE.
STATE OF NEBRASKA, APPELLEE, V. R.A., JR., APPELLANT.

403 N.W.2d 357

Filed April 3, 1987.    No. 86-475.

Randal B. Brown, for appellant.

Laurie J. Campbell, Deputy Lancaster County Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

R.A., Jr., appeals from the orders of the separate juvenile court of Lancaster County, Nebraska, which found his children to be neglected, limited his visitation, and required him to submit to a psychological evaluation.

The original petition in this proceeding was filed April 3, 1986, and alleged that V.A., a daughter born November 22, 1982, lacked proper parental care by reason of the faults and habits of the appellant. The petition further alleged that on or between September 1, 1985, and February 28, 1986, the appellant engaged in inappropriate sexual contact with his daughter. An amended petition filed April 17, 1986, contained the same allegations as to the daughter and further alleged that R.A., a son born January 1, 1980, was at risk due to the actions of his father.

At a hearing on April 17, 1986, the appellant denied the allegations of the amended petition. At the adjudication hearing on May 5, 1986, the son, who was 6 years old, testified that he saw his father "put his finger up in my sister's bottom." The child testified that the appellant inserted the fourth finger on his hand and that the incident occurred while the appellant was bathing the children. He further testified that his sister did not cry or scream when the incident occurred. He also testified that his father had never touched his private places, made him feel uncomfortable, or "hurt" him while bathing him. He further testified this incident was the only time he had seen his father touch the daughter in that manner.

The daughter, who was 3 years old at the time of the hearing, did not testify. Her mother was allowed to testify, over objection, as to the following statements made by the daughter approximately 5 minutes after the child had returned from a weekend visit with the appellant and was being bathed. While the child was standing up in the bathtub, she "stated that she had been hurt." The mother then asked, "In what way were you

hurt?" and the daughter replied "her daddy had put his finger in there." The mother replied, "Well, [V.A.], you sure he just wasn't washing you and, you know, it might have been rubbed a little hard or something?" The girl replied, "No, it went up there." When the child was removed from the bathtub she indicated to her mother that the appellant had put his fingers in her vagina. The child was then taken to a physician, and Child Protective Services was informed.

The parents are separated and the children are in the custody of their mother. The mother testified the children had spent every other weekend with the appellant for approximately 2 years prior to this incident. The visitations were discontinued in December of 1985. The mother also testified that her daughter had suffered from frequent vaginal infections and that the appellant had been instructed as to appropriate bathing techniques, which included washing the vaginal area. She further testified that her daughter had never reported that anyone else had touched her in an inappropriate manner and neither child had ever indicated an unwillingness to be near the father.

The appellant objected to the admission of the child's statements, as reported by the mother, on the ground the statements were inadmissible hearsay. The trial court concluded the statements were admissible under the excited utterance exception to the hearsay rule contained in Neb. Rev. Stat. § 27-803(1) (Reissue 1985). The trial court stated:

> [I]n looking at the matter of the excited utterance, the excited utterance must be gaged in relationship to what the incident was. Even as testified to here, there wasn't any physical harm done to the child. There was no tearing or that type thing as there was in State vs. Redfeather. You're talking about a three year old child. It's a matter here, a three year old child who comes home and within a short period of time is given a bath and who then relates the incident. As to what is the excited utterance so far as a three year old child is different than it would be for someone older. The circumstances are such that the matter would be considered an excited utterance for a child of that age in that circumstance.

Tim Domgard, a Lincoln police officer, testified that he spoke with the appellant on February 1, 1986, concerning the alleged sexual contact. The officer asked the appellant if he believed his daughter was telling the truth about the incident, and the father replied, "Yes." The officer stated that he was referring only to the alleged incident and had asked the appellant whether he had touched the child as she had alleged. The appellant's response was "something like: I don't know if I have. I guess what scares me is that I may have and it's too awful for me to remember and that I might have blocked it out, but then I would have to be crazy to do that. And I'm not crazy." The officer also testified that at one point the appellant stated, "I feel I did it," after stating that something must have happened because so many people had told him he had done it. The officer further testified the appellant stated he would not admit to inappropriate sexual contact with his daughter because that would be the most terrible thing he could do for his child. In addition, the officer stated the appellant reported one other incident in which he had had sexual thoughts or feelings about his daughter.

The appellant then presented his mother and counselor as witnesses. The appellant's mother testified she had often seen him interact with the children and thought he had a good relationship with them. The counselor testified that he had met with the appellant on approximately six occasions and that the appellant seemed anxious and depressed during that time. He further testified the appellant seemed confused "as to the reality of whether or not the incident alleged between himself and his daughter ever actually occurred."

After hearing the evidence summarized above, the trial court found the allegations in the amended petition to be true and determined the children lacked proper parental care due to the faults of the appellant, as defined by Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1986). The court based its findings on the direct evidence provided by the son's eyewitness testimony and the corroboration provided by the daughter's statements to her mother, the appellant's failure to deny the allegations, and his statement that he believed his daughter was telling the truth about the incident. The trial court commented

that the children apparently loved their father and enjoyed their visits, making it unlikely their testimony was false.

Final disposition was continued pending the completion of a predispositional report by the Department of Social Services. In the interim, the court ordered that visitation between the appellant and the children be under supervision.

The disposition hearing was held May 28, 1986. The State presented a predispositional report, prepared by Child Protective Services, which contained the following recommendations: (1) that custody of the children remain with their mother; (2) that the father's visitation be supervised by Child Protective Services; (3) that the children participate in an educational program on sexual abuse; (4) that the children participate in any counseling recommended by Child Protective Services and the Child Guidance Center; (5) that the father participate in and complete a psychological evaluation and counseling at the Child Guidance Center; (6) that the father have no unsupervised contact with the children until he presents evidence to the court that he no longer presents a risk to the children; and (7) that the children not be removed from the state without permission.

The appellant objected to the requirement that he participate in and complete a psychological evaluation and counseling, testified that he did not believe he posed a risk to his children, and denied having engaged in any inappropriate sexual contact with his daughter.

Michael Utley, project director of the incest and sexual abuse project at the Child Guidance Center, testified it was its policy to require perpetrators to admit their actions before accepting them for treatment. This was required because, in his experience, persons who did not admit involvement would rarely change that position and would not benefit from the program.

The trial court adopted the recommendations, with two changes: The appellant's mother was approved to supervise visitation; and the appellant was required to submit to a psychological evaluation, but not to participate in counseling. The decision not to require counseling was based on Utley's testimony that it would serve no purpose to direct such

participation in view of the appellant's objection to it. The trial court stated the evaluation was ordered so that the appellant would have the benefit of the results obtained from it, opening the door to treatment and the resumption of a normal relationship with his children. The trial court further stated this was the final order in the case. This appeal followed.

The appellant has made four assignments of error. He contends the trial court erred in admitting the daughter's statements, in finding the state presented sufficient evidence that the children lacked proper parental care, in overruling his motion for a new trial, and in ordering him to submit to a psychological evaluation.

The State contends the trial court's finding that the children lacked proper parental care was supported by sufficient evidence, the child's out-of-court statements qualified under the excited utterance exception, the order requiring the father to submit to a psychological evaluation was not a final order, and, alternatively, the court had authority to order the father to make reasonable efforts to rehabilitate himself by undergoing a psychological evaluation.

The appellant first contends that his daughter's statements to her mother did not rise to the level of an excited utterance because the child was not visibly excited when she made the statements. The State contends the statements fall within the exception because they were spontaneously made immediately upon the child's return to her mother.

The determination as to the admissibility of an excited utterance generally rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Lee*, 216 Neb. 63, 341 N.W.2d 600 (1983).

The excited utterance exception is based on the common-law res gestae exception. 4 J. Weinstein & M. Berger, Weinstein's Evidence 803-33 (1985); 6 J. Wigmore, Evidence in Trials at Common Law § 1745 (J. Chadbourn rev. 1976). The underlying theory of the exception is that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." 4 J. Weinstein & M. Berger, *supra.* Spontaneity is the key factor in determining whether a statement falls within

the exception. *Id.* See, also, *Roh v. Opocensky*, 126 Neb. 518, 253 N.W. 680 (1934) (spontaneous exclamations uttered impulsively, and so closely connected with the event as to exclude the idea the statements were made with deliberation and purpose, are admissible as res gestae). The standard of measurement for the time interval between the event and the statement is the duration of the state of excitement. 4 J. Weinstein & M. Berger, *supra.*

This court has stated that to qualify as an excited utterance, generally, a statement must meet the following criteria: (1) There must have been a startling event; (2) the statement must relate to the event; and (3) the statement must have been made by the declarant while under the stress of the event. *State v. Reed*, 201 Neb. 800, 272 N.W.2d 759 (1978).

It is not disputed that the daughter's statements were made after the occurrence of a startling event, and related to that event. The sole question is whether the statements were made while the child was under the stress of the event. The appellant contends the child was not under the stress of the incident because she manifested no outward signs of excitement. That argument is unpersuasive.

The courts of many jurisdictions have recognized that special circumstances exist with regard to the motives behind the statements of very small children. See Note, *A Tender Years Doctrine for the Juvenile Courts: An Effective Way to Protect the Sexually Abused Child*, 61 U. Det. J. Urb. L. 249 (1984). The statements are admitted for the reason that it is unlikely a small child will have reason to fabricate stories of sexual abuse. *Id.* See, also, *People v. Bitler*, 146 Ill. App. 3d 477, 497 N.E.2d 137 (1986). As a result, numerous jurisdictions have relaxed the common-law res gestae requirements that a statement be contemporaneous and spontaneous when made by a young victim of sexual abuse. 61 U. Det. J. Urb. L., *supra.*

The contemporaneous requirement, in the res gestae context, traditionally meant the statement was made while the exciting event was still in progress. The spontaneity requirement meant the statement was made while the declarant was still under the influence of the exciting event and the statement was an unreflected statement concerning the event.

This court relaxed the contemporaneous requirement in cases involving small children in *State v. Red Feather*, 205 Neb. 734, 289 N.W.2d 768 (1980). There, we stated the time lapse between the assault and the statements was not dispositive; rather, the crucial consideration was whether there had been time for conscious reflection. The admission of statements concerning sexual assault made by a 7-year-old girl approximately 1 hour after the incident was upheld. Similarly, in *State v. Roy*, 214 Neb. 204, 333 N.W.2d 398 (1983), we upheld the admission of a child's statements concerning a sexual assault made after an unknown period of time had elapsed since the assault. These decisions are in accord with decisions rendered in numerous other jurisdictions. See, e.g., *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied* 450 U.S. 1001, 101 S. Ct. 1709, 68 L. Ed. 2d 203 (1981) (statements made approximately 1 hour after the assault); *United States v. Nick*, 604 F.2d 1199 (9th Cir. 1979) (statements made after an unknown period of time had elapsed since the assault); *People v. Bitler, supra* (time lapse of 24 hours did not control admissibility of statements); *In the Matter of Meeboer*, 134 Mich. App. 294, 350 N.W.2d 868 (1984) (admitted statements made the morning after an assault); *State v. Padilla*, 110 Wis. 2d 414, 329 N.W.2d 263 (1982) (admitted statements made 3 days after the assault).

Many courts have also relaxed the requirement of spontaneity when the declarant made the statement at the earliest opportunity to do so, during continued intimidation, or while fearful of another attack. 61 U. Det. J. Urb. L., *supra* at 257-58. The Wisconsin Court of Appeals has relaxed the spontaneity requirement by fashioning a judicial presumption that stress is present in children for some time after a triggering event occurs. *State v. Padilla, supra.* This decision was based upon several observations: that a child is likely to repress such an incident; that a child is likely to report such an incident only to the mother; and that the characteristics of young children work to produce declarations " 'free of conscious fabrication' " for a longer time after the incident than adults. *Id.* at 419, 329 N.W.2d at 266. The court also noted that a young child is not likely to review such an incident and calculate the

effect of such a statement. *Id.* (citing *United States v. Nick, supra*).

In a subsequent opinion, *State v. Gollon,* 115 Wis. 2d 592, 340 N.W.2d 912 (1983), that court stated that the fact that a child did not appear to be emotionally upset when making statements concerning an assault was only one factor to be considered, although it may weigh against admitting the statements. In view of the facts of *Gollon* and the applicable law, the court concluded the trial court had not abused its discretion in admitting the statements even though the child had no outward signs of excitement.

In *People v. Bitler,* 146 Ill. App. 3d 477, 497 N.E.2d 137 (1986), the Illinois Appellate Court affirmed its adoption of the *Padilla* court's analysis. The court rejected the defendant's argument that the statements were inadmissible because the victims did not appear to be under the stress of excitement when the statements were made. The defendant argued there was no evidence the victims displayed any anxiety that day; rather, the evidence showed they had appeared calm. The court concluded the stress caused by the incident "would have lingered long after the acts themselves were committed," and upheld the admission. *Id.* at 483, 497 N.E.2d at 140.

Similarly, in *United States v. Iron Shell, supra,* there was some evidence the child was calm and unexcited when making the statements. There was also evidence to the contrary. The court concluded that in view of the circumstances of the assault, its shocking nature, and the age of the declarant, it was not an abuse of discretion for the trial court to find the child was still under the stress of the attack when the statements were made. The court commented that it was not unreasonable for the trial court to have found the child was in a continuous state of excitement from the time the assault occurred.

Some jurisdictions continue to require a showing that the child-declarant manifested outward signs of excitement as a foundational requirement for the excited utterance exception. See, e.g., *State in Interest of C.A.,* 201 N.J. Super. 28, 492 A.2d 683 (1985) (statements inadmissible because there was no evidence of the existence of any excitement by the children); *State v. Brown,* 341 N.W.2d 10 (Iowa 1983) (victim must be

upset or in an excited state).

The approach taken by the *Padilla* court and those courts which have followed it appears sound to us in view of the nature of the excited utterance exception and its application in cases of the sexual abuse of children. In the case of small children, generally, the stress of a sexual assault is present for some time after the assault occurred. The key requirement remains spontaneity, which, in our view, requires a showing the statements were made without time for conscious reflection.

The record in this case shows the trial court correctly determined the statements were admissible. The trial court considered the child's age, the circumstances of the assault, and the facts that the statements were made to the child's mother and were made soon after the child had returned to the mother's care. The trial court ascertained that several indicia of reliability were present. The statements were voluntarily made to a trusted authority figure as soon as the child was able to report the incident out of the defendant's presence, and the prior parent-child relationship revealed no motive for fabrication. This was sufficient evidence to support the trial court's admission of the statements. The father's first assignment of error is therefore overruled.

The next assignment of error is that insufficient evidence was presented at the adjudication hearing to support a finding that the children lacked proper parental care due to the appellant's actions. That contention is not supported by the facts.

The standard of review applicable to a juvenile proceeding under § 43-247 is de novo on the record. *In re Interest of J.M.*, 223 Neb. 609, 391 N.W.2d 146 (1986). The findings of fact made by the juvenile court are accorded great weight because the court observed the parties and witnesses and could better judge their credibility.

At the adjudication hearing there was direct evidence of the assault through the testimony of the victim's brother. His testimony was corroborated by the daughter's statements to her mother concerning the incident. Further, testimony by the investigating officer revealed that the appellant believed his daughter was telling the truth about the incident. This was sufficient evidence from which the juvenile court could find the

allegations true and properly take jurisdiction over the children.

The appellant next contends his motion for a new trial should have been granted. This contention was not separately argued in his brief and will not be considered. Neb. Ct. R. of Prac. 9D(1)d (rev. 1986). See, also, *In re Interest of J.S., S.C., and L.S.*, 224 Neb. 234, 397 N.W.2d 621 (1986).

The final assignment of error concerns the portion of the juvenile court's order which requires the appellant to submit to a psychological evaluation. The appellant contends the juvenile court did not have authority to order him to participate in and complete a psychological evaluation as part of a plan to correct the conditions of neglect the court had found to exist.

The State responds that the appellant cannot appeal from that order because it is not a final order, and, alternatively, if it is an appealable order, the juvenile court had the authority to order the father to make reasonable efforts to rehabilitate himself.

The order which required the appellant to submit to a psychological evaluation was a part of the dispositional order and, as such, was a final order from which an appeal may be taken. See *In re Interest of V.T. and L.T.*, 220 Neb. 256, 369 N.W.2d 94 (1985).

In support of his contention, the appellant points out that Neb. Rev. Stat. § 43-210.04 (Reissue 1978) was the predecessor of Neb. Rev. Stat. § 43-288 (Reissue 1984). The legislative history of § 43-210.04 reveals that the Legislature considered adding a provision to that section which would have permitted juvenile courts to order parents to undergo medical, psychiatric, and psychological diagnosis and treatment. Floor Debate, L.B. 290, Judiciary Committee, 84th Leg., 1st Sess. 812-19 (Feb. 19, 1975). That provision was deleted after several legislators opposed it on the grounds it would pose a danger of overreaching by enabling a court to order an entire family to seek treatment because one of its members became involved with the juvenile court for any reason. The appellant argues that the juvenile court had no authority to order him to submit to a psychological evaluation, since the Legislature specifically excluded such a provision from the statute. That argument is

unpersuasive in this case.

As we stated in *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986), the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Reissue 1984 & Cum. Supp. 1986), must be liberally construed to accomplish its purpose of serving the best interests of the juveniles who fall within it. The juvenile court has broad discretion as to the disposition of those who fall within its jurisdiction. See *In re Interest of V.T. and L.T., supra*.

The basis for such power is the power of the State. The State's jurisdiction

arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine the status and custody that will best meet its needs and wants . . . .

. . . .

The juvenile court is a product of the solicitude of the law for the welfare of infants. Its powers and duties are described more or less in detail in our statutes, and because of their humanitarian and beneficient [sic] purpose, they should be liberally construed to the end that their manifest purpose may be effectuated to the fullest extent compatible with their terms.

*Stewart v. McCauley*, 178 Neb. 412, 415, 418, 133 N.W.2d 921, 924-25 (1965).

It is the law in this jurisdiction that juvenile courts have broad discretion to accomplish the purpose of serving the best interests of the children involved. *State v. Vogt*, 190 Neb. 205, 206 N.W.2d 849 (1973). Juvenile courts have long recognized that psychiatric testing or psychological evaluations of a parent may be required to determine the best interests of children when issues of custody and visitation are presented. See, e.g., *In re Interest of J.S., S.C., and L.S.*, 224 Neb. 234, 397 N.W.2d 621 (1986); *In re Interest of S.P., N.P., and L.P.*, 221 Neb. 165, 375 N.W.2d 616 (1985); *In re Interest of Wood and Linden*, 209 Neb. 18, 306 N.W.2d 151 (1981).

Further, this court has often stated that a juvenile court may, within its discretion, require parents to make reasonable efforts to rehabilitate themselves. See, e.g., *In re Interest of W.*, 217 Neb. 325, 384 N.W.2d 861 (1984); *In re Interest of Wood and*

*Linden, supra.*

In this case the juvenile court found that the appellant had engaged in inappropriate sexual contact with his daughter and therefore posed a risk to both children. The trial court ordered the father to submit to a psychological evaluation to provide him with a means of rehabilitating himself and reestablishing a normal relationship with his children. The order was an attempt by the court to serve the children's best interests, was within the jurisdiction of the court, and, under the circumstances of this case, was not an abuse of discretion.

The judgment is affirmed.

AFFIRMED.