IN RE INTEREST OF D.P.Y. AND J.L.Y., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. P.Y., APPELLANT.
477 N.W.2d 573

Filed December 6, 1991.    No. 91-230.

S. Caporale for appellant.

Michael D. Wellman, Sarpy County Attorney, and Mary Margaret Zerse Stevens for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

648

BOSLAUGH, J.

The appellant is the father of a son, born May 14, 1981, and a daughter, born May 15, 1986. On July 30, 1990, a petition was filed in the juvenile court, alleging that the children were in a situation or engaged in an occupation dangerous to life or limb or injurious to their health or morals. See Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988).

After an evidential hearing, the juvenile court found and adjudged on January 24, 1991, that the children were children within the meaning of § 43-247(3)(a) and continued the matter for a disposition hearing. From the order of adjudication, the father has appealed to this court.

The record shows that the appellant and the children's mother were divorced on February 14, 1989. The mother was granted custody of the children, and the appellant was granted reasonable rights of visitation.

An amended petition was filed on October 15, 1990, which alleged that the appellant had engaged in inappropriate sexual contact with the children by having taken their clothes off or instructing them to take their clothes off for him, and by having touched their intimate body parts during visitations. The amended petition alleged that the appellant had emotionally abused his children by intimidating them, by threatening them with death in the event of their disclosure of the above-mentioned abuse, by having told them to lie to their babysitter and their mother about the events that had taken place during visitation, and by humiliating them by engaging in such unnatural and immoral acts with them during visitation. The amended petition further alleged that the mother felt she could not protect the children from further abuse, intimidation, and humiliation by the appellant and that she had noticed a steady deterioration in their emotional well-being and stability, as well as dramatic anxiety in the children at the mention of the appellant.

Following the adjudication hearing, the juvenile court did not find the allegations referring to the threats made to the children, the mother's feelings of not being able to protect the children, and the steady deterioration of the children's emotional well-being and stability to be true.

At the adjudication hearing, Lynda Sallach Madison, a psychologist, testified that she had performed a psychological evaluation of the daughter. She testified that the daughter's behavior and test results were consistent with those of children who experience physical aggression as part of their lifestyle.

Madison's psychological evaluation summary states that the daughter's behavior and responses suggest a high probability that she has been in a chaotic environment in which she does not feel able to control events; that she is fearful, unprotected, and confused; and that her test results show her expectation that men will be violent against women and children and that women will be helpless to protect themselves.

As part of the evaluation, the child made drawings of herself, her mother, and the appellant. Madison stated that based on the sexual content of the drawings and the child's verbalizations as to what they depicted, it is highly probable that she has been exposed to sexual experiences beyond her developmental capacity to understand. Madison concluded that it is highly probable that the daughter has experienced physical aggression and sexual abuse from a man at some time in the past.

Madison also testified that it would not be in the daughter's best interests to testify at the adjudication hearing.

Julie Ann McKee, a psychologist, testified that she had performed a psychological evaluation of the son and that her findings indicated that he had been physically, sexually, and/or emotionally abused.

During McKee's interview with the son, he reported to her that the appellant had inappropriately touched him and his sister. McKee found his report of sexual abuse to be highly credible and believed it was unlikely that he had been coached to make a false allegation because his emotional tone upon disclosure was predominantly sad, which is characteristic of sexual abuse victims in his age range; because his account was matter-of-fact and in no way dramatized or embellished; because he reported the sexual abuse in simple, concrete terms consistent with his age and verbal abilities; and because his psychological testing was consistent with that of children who have suffered emotional, physical, and/or sexual abuse.

The son also drew pictures of himself and his family. His

pictures of the appellant and the appellant's girl friend, with whom the appellant lives, depict the male and female sexual organs. The pictures of himself, his sister, and his mother do not indicate any sexual organs.

McKee also testified it would be too traumatizing for the son to testify at the adjudication hearing.

Over the appellant's objection as to inadmissible hearsay, the children's babysitter was allowed to testify that on July 16, 1990, while she was babysitting the children, the daughter was sitting on the floor watching television when she suddenly hit her cat so hard that it flew across the room and hit the wall. After she had hit the cat, she said, "That's how my daddy hits me." The babysitter responded by asking, "Your daddy hits you like that?" and the daughter said the appellant slapped her and her brother across the face and kicked them in the head and legs. According to the babysitter, the daughter then went on for about 2 hours telling about the physical and sexual abuse the appellant had done to them. The babysitter testified that she did not ask any questions but listened as the daughter described the things the appellant had done to her and her brother.

The juvenile court admitted the babysitter's testimony on the theory that it fell within the excited utterance exception to the hearsay rule contained in Neb. Rev. Stat. § 27-803(1) (Reissue 1989).

The babysitter testified that she told the children's mother what the daughter had told her and that the mother later informed the Douglas County sheriff's office. Officer Bruce Decker of the LaVista Police Department was contacted to assist in investigating the sexual abuse allegations because some of the incidents described could have taken place at the appellant's apartment in LaVista.

Officer Decker was unable to interview the daughter because she would not talk to him. However, he was able to interview the son, who described how he had been abused by the appellant and his girl friend.

Officer Decker was allowed to testify as to this information at the adjudication hearing over the appellant's objection as to inadmissible hearsay. The juvenile court admitted this testimony for the limited purpose of showing that the statements had been made and not for the truth of the matter

asserted.

The appellant and his girl friend testified and denied that there had been any sexual abuse of the appellant's children. However, the appellant admitted that he had struck the children's mother in the children's presence and that he frequently lost his temper with the daughter because she was not yet toilet trained. The appellant's girl friend testified that the appellant used profanities in front of the children when he was angry. The appellant's girl friend also testified that she had observed a bruise on the daughter's face, but she did not know how it got there.

The appellant's principal assignments of error relate to the admission of hearsay testimony by the juvenile court. The testimony of the babysitter as to the statements made to her by the daughter was admitted under the excited utterance exception. The determination as to the admissibility of an excited utterance is a matter within the discretion of the trial court that will not be disturbed on appeal absent an abuse of discretion. *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987).

Section 27-803(1) excepts from the hearsay rule "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." This exception to the hearsay rule is based on the theory that " 'circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.' " *In re Interest of R.A. and V.A., supra* at 162, 403 N.W.2d at 362 (quoting 4 J. Weinstein & M. Berger, Weinstein's Evidence 803-33 (1985)).

For a statement to qualify as an excited utterance, the following criteria must be established: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant while under the stress of the event. *In re Interest of R.A. and V.A., supra.* The key requirement is spontaneity, which "requires a showing the statements were made without time for conscious reflection." *Id.* at 166, 403 N.W.2d at 364.

In this case, there is no indication as to when the alleged abuse of the children as reported to the babysitter by the

daughter occurred. While the time interval may not be controlling, see *In re Interest of R.A. and V.A., supra*, it should be considered with regard to whether the statements were made without time for conscious reflection. The statements made by the daughter do not appear to relate to a startling event that had recently occurred, but were made to explain why she hit the cat. Accordingly, there is no showing that the statements were made while she was under the stress of a startling event, and the trial court abused its discretion in admitting the testimony of the babysitter as to what the daughter told her on July 16, 1990.

The testimony of Officer Decker as to what the son told him during the course of his investigation was admitted for the limited purpose of showing that the statements had been made, and not for the truth of the matter asserted. If Officer Decker's testimony is not considered for the truth of the matter asserted, it is irrelevant, and therefore, we do not consider it in the determination of this matter.

The Supreme Court reviews this proceeding de novo on the record. *In re Interest of R.A. and V.A., supra*. "In such de novo review, we must disregard impermissible or improper evidence," *In re Interest of D.L.S.*, 230 Neb. 435, 440, 432 N.W.2d 31, 35-36 (1988), and consider whether the children come within the meaning of § 43-247(3)(a), as established by a preponderance of the admissible evidence.

Disregarding the testimony of the babysitter and Officer Decker as to the statements made to them, we conclude that the evidence is sufficient to establish that the children are in a situation dangerous to life or limb or injurious to their health or morals as provided in § 43-247(3)(a). Both psychologists testified that the children's behavior is consistent with children who have been abused physically, emotionally, and/or sexually. Exhibits 1 through 6, which include the psychologists' reports and the children's drawings, are persuasive. Thus, we find by a preponderance of the evidence that the children are within the meaning of § 43-247(3)(a) and that the decision of the juvenile court should be affirmed.

AFFIRMED.

CAPORALE, J., not participating.