276 Neb. 679
IN RE INTEREST OF TAYLOR W., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v.
TAYLOR W., APPELLEE, AND
DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF JUVENILE SERVICES, APPELLANT.
IN RE INTEREST OF LEVI C., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
LEVI C., APPELLEE, AND
DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF JUVENILE SERVICES, APPELLANT.
Nos. S-08-026, S-08-074
Court of Appeals of Nebraska.
Filed October 24, 2008.
Jon Bruning, Attorney General, B. Gail Steen, Special Assistant Attorney General, and Jodi M. Fenner for appellant.
Gary E. Lacey, Lancaster County Attorney, Barbara J. Armstead, Shellie Sabata, and Richard C. Grabow, Senior Certified Law Student, for appellee State of Nebraska.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

FACTUAL BACKGROUND
Taylor W. and Levi C., the minors in these two cases which were consolidated for briefing and oral argument, were adjudicated under Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2006) (misdemeanor law violation). Both Taylor and Levi were "committed" by the separate juvenile court of Lancaster County into the custody of the Office of Juvenile Services (OJS), an office of the Department of Health and Human Services (collectively DHHS). The "commitment" was for purposes of an evaluation pending the disposition of petitions filed against each juvenile. We interpret the juvenile court's use of the word "committed" to mean "placed" in accordance with Neb. Rev. Stat. § 43-413(1) (Reissue 2004), which provides that a court may "place a juvenile" with OJS or the Department of Health and Human Services for "an evaluation to aid the court in the disposition." In addition to ordering the evaluations, the juvenile court further ordered that both Taylor and Levi be detained at the Lancaster County Youth Services Center for purposes of their respective evaluations.
Following the entry of the order placing Levi at the Lancaster County Youth Services Center, DHHS filed a motion to remove him from detention. DHHS argued that the juvenile court exceeded its statutory authority in ordering a specific placement for Levi during his evaluation. The motion was denied. No such motion was filed with respect to Taylor. DHHS then filed these timely appeals from the placement orders in each case. We moved these cases to our docket pursuant to our authority to regulate the dockets of this court and the Court of Appeals.[1]

ASSIGNMENT OF ERROR
On appeal, DHHS assigns that the juvenile court exceeded its statutory authority in ordering specific placements for Taylor and Levi.

STANDARD OF REVIEW
[1,2] Mootness does not prevent appellate jurisdiction, but because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, we have reviewed mootness determinations under the same standard of review as other jurisdictional questions.[2] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[3]
[3] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.[4]
[4] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5]

ANALYSIS

Final Order.
The first issue presented by these appeals is whether the juvenile court's orders were final.
[5,6] We have previously held that orders determining where a juvenile will be placed are dispositional in nature.[6] And we have further concluded that dispositional orders are final and appealable.[7] As such, the juvenile court's placement orders in these cases are final and appealable.

Mootness.
[7,8] We are next asked to decide whether these appeals are moot. A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation.[8] However, an appellate court may choose to review an otherwise moot case under the public interest exception if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. This exception requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.[9]
The parties are in agreement that the evaluations of Taylor and Levi have been completed, and thus judicial relief is unavailable. However, DHHS and the county attorney disagree on whether the public interest exception should apply to allow this court to review the issues presented on appeal. DHHS argues that lilt would be virtually impossible for a case raising the issue of placement during [a Department of Health and Human Services]/OJS evaluation to be heard at the appellate level before the underlying case reached disposition, given that the statutory scheme anticipates the evaluation to be completed within thirty days."[10] DHHS further notes that this problem is likely to recur. The county attorney, however, contends that each of these cases "require[s a] case-by-case analysis, and a ruling on either would not be instructive to the courts for future proceedings."[11]
We disagree with the county attorney's characterization of these cases as requiring a "case-by-case analysis." Rather, the issue presented by these appeals is a purely legal onewhether the juvenile court has the authority to order a specific placement under these circumstances. It is apparent that this issue is capable of recurring, because we are now presented with two cases raising the same legal issue and the Court of Appeals has previously been presented with this same issue on at least one occasion.[12] Because of the nature of juvenile cases, this action is essentially unreviewable without the application of the public interest exception. We therefore conclude that this issue merits review under the public interest exception to the mootness doctrine in order to provide guidance to the juvenile court, DHHS, county attorneys, and other interested parties.

Authority of Juvenile Court to Order Specific Placement.
We now turn to DHHS' sole assignment of error: that the juvenile court exceeded its statutory authority in ordering a specific placement for Taylor and Levi.
The juvenile court may place a juvenile with DHHS for purposes of an evaluation as set forth in Neb. Rev. Stat. § 43-281 (Reissue 2004) and § 43-413. Section 43-281 provides that "fflollowing an adjudication of jurisdiction and prior to final disposition, the court may place the juvenile with [OJS] or the [Department of Health and Human Services] for evaluation. The office or department shall make arrangements for an appropriate evaluation." Section 43-413(1) states that "[a] court may, pursuant to section 43-281, place a juvenile with [OJS] or the Department of Health and Human Services for an evaluation to aid the court in the disposition." Section 43-413(3) further provides that "[al juveniles shall be evaluated prior to commitment to [OJS]. The office may place a juvenile in residential or nonresidential community-based evaluation services for purposes of evaluation to assist the court in determining the initial level of treatment for the juvenile."
Neb. Rev. Stat. § 43-414 (Reissue 2004) further sets forth OJS' role in the evaluation process: "Each juvenile placed for evaluation with [OJS] shall be subjected to medical examination and evaluation as directed by the office." And Neb. Rev. Stat. § 43-415 (Reissue 2004) provides that "[a] juvenile placed for evaluation with [OJS] shall be returned to the court upon the completion of the evaluation or at the end of thirty days, whichever comes first." This section also grants to the juvenile court the authority to extend this 30-day time period.
The county attorney argues that nothing in the language of §§ 43-281, 43-413, and 43-414 "specifically limits the discretion of the juvenile court in ordering the continued detention of a juvenile at a specific detention facility during the pendency of an OJS evaluation."[13] Instead, he cites to Neb. Rev. Stat. §§ 43-253, 43-284, and 43-289 (Reissue 2004) in support of his contention that "[t]he juvenile court has authority to determine a juvenile's placement and care pending the adjudication of a case, at adjudication (pending disposition), and post-disposition."[14] The county attorney further contends that "Mil light of the juvenile court's authority to determine placement and care at each step of a juvenile's interaction with the juvenile court, it would be inconsistent to read . . . § 43-413 as cutting the juvenile court out of the decision making regarding the placement of a juvenile for evaluation."[15]
We have examined the cited statutes and conclude that the statutes do not provide the overarching authority of the juvenile court suggested by the county attorney.
Section 43-253 is primarily concerned with the authority of a probation officer to take a juvenile into temporary custody: the only authority given to the juvenile court in this section is the ability to "admit such juvenile to bail by bond." This section provides no authority to the juvenile court to make specific placements.
The other two statutes cited by the county attorney §§ 43-284 and 43-289do arguably grant the juvenile court authority to specifically place a juvenile, but only under circumstances which are not presented by these cases. Section 43-284 provides the juvenile court the authority to make a placement of juveniles adjudicated under § 43-247(3) (abuse and neglect), (4) (traffic infractions), and (9) (guardianships). But in these cases, both Taylor and Levi were adjudicated under § 43-247(1). And § 43-289 authorizes the juvenile court to make a placement only in the limited instance where it is necessary to admit a juvenile into a hospital, a situation not presented by these cases.
We note that Neb. Rev. Stat. §§ 43-254 and 43-258 (Reissue 2004), which were not cited by the county attorney in support of his argument, do grant to the juvenile court the power to make a specific placement prior to adjudication. These provisions are, of course, inapplicable in this case, because both Taylor and Levi have been adjudicated. But beyond this, we conclude that these statutes, even considered along with §§ 43-284 and 43-289, are insufficient to support the "authority to determine placement and care at each step of a juvenile's interaction with the juvenile court," which authority the county attorney contends the juvenile court has. Our review of the applicable statutes has revealed no such authority. Indeed, our review suggests the opposite: the fact that the ability to order a specific placement is provided for some of the time suggests that it was not intended to be provided in other instances.
Other than the power to order an evaluation and to extend the time in which to complete an evaluation, there is no statutory authority granting the juvenile court any control over the evaluation. However, as is demonstrated above, there is plainly discretion given to OJS in the performance of these court-ordered evaluations. In particular, § 43-281 provides that OJS or the Department of Health and Human Services "shall make arrangements for an appropriate evaluation," while § 43-414 notes that juveniles placed with OJS are subject to examination and evaluation "as directed by the office." And § 43-413(3) specifically permits OJS, not the juvenile court, to place juveniles in residential or nonresidential evaluation services.
We conclude that DHHS, and not the juvenile court, has the authority to direct the performance of an evaluation under §§ 43-281 and 43-413. This authority includes the ability to place the juvenile during the performance of the evaluation. The juvenile court therefore exceeded its authority in ordering specific placements in these cases.

CONCLUSION
The juvenile court acted in excess of its statutory authority when it ordered specific placements for Taylor and Levi. However, because the instant appeals are moot, and our conclusion reached under the public interest exception to the mootness doctrine, we dismiss the present appeals.
APPEALS DISMISSED.
NOTES
[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).
[2] BryanLGH v. Nebraska Dept. of Health & Human Servs., 276 Neb. 596, 755 N.W.2d 807 (2008).
[3] Id.
[4] See In re Interest of Walter W., 274 Neb. 859, 744 N.W.2d 55 (2008).
[5] In re Interest of Anthony R. et al., 264 Neb. 699, 651 N.W.2d 231 (2002).
[6] See In re Interest of R.G., 238 Neb. 405, 470 N.W.2d 780 (1991), disapproved on other grounds, O'Connor v. Kaufman, 255 Neb. 120, 582 N.W.2d 350 (1998).
[7] See In re Interest of R.A. and V.A., 225 Neb. 157, 403 N.W.2d 357 (1987), overruled on other grounds, State v. Jacob, 242 Neb. 176, 494 N.W.2d 109 (1993). See, also, In re Interest of Jeremy T., 257 Neb. 736, 600 N.W.2d 747 (1999).
[8] Stenger v. Department of Motor Vehicles, 274 Neb. 819, 743 N.W.2d 758 (2008).
[9] In re Applications of Koch, 274 Neb. 96, 736 N.W.2d 716 (2007).
[10] Brief for appellant at 13.
[11] Brief for appellee at 9.
[12] In re Interest of Ashley D., Nos. A-01-111, A-01-250, 2002 WL 798653 (Neb. App. Apr. 30, 2002) (not designated for permanent publication).
[13] Brief for appellee at 11.
[14] Id.
[15] Id.