IN RE INTEREST OF TABATHA R., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE, V. RONDA R., APPELLANT, AND RONALD D., APPELLEE AND CROSS-APPELLANT.

587 N.W.2d 109

Filed December 18, 1998.    No. S-98-081.

A. Michael Bianchi for appellant.

Regina T. Makaitis for appellee State.

Dean M. Johnson for appellee Ronald D.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

Ronda R., natural mother of Tabatha R., appeals and Ronald D., natural father of the infant, cross-appeals from a portion of a dispositional order filed by the juvenile court of Douglas County on December 22, 1997. The dispositional order directed that the infant remain in the custody of the Department of Health and Human Services (DHHS) for appropriate care and placement and adopted DHHS' recommendation that no rehabilitation plan be ordered for either parent. DHHS was previously known as the Department of Social Services, and for clarity, we refer to both as "DHHS" throughout this opinion. For the reasons cited below, we vacate and set aside the juvenile court's January 26, 1998, order requiring the Lincoln Regional Center to release the father's medical records, and we affirm the juvenile court's dispositional order dated December 22, 1997.

## BACKGROUND

This is the second appearance of this case in this court. See *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997) (*Tabatha I*), *amended by* 252 Neb. 864, 566 N.W.2d 782 (1997). A detailed statement of facts is set forth in *Tabatha I*. The infant was born on December 29, 1995. Briefly summarized, on January 22, 1996, paramedics brought the infant to St. Joseph Hospital in Omaha. At that time, the infant was in full cardiac and pulmonary arrest.

On January 26, 1996, the juvenile court entered an emergency ex parte order, placing temporary custody of the infant in and with DHHS. Following a detention hearing, the court, without resistance from either parent, continued temporary custody in and with DHHS and authorized DHHS to consent to any medical, surgical, or psychiatric treatment which in the opinion of a licensed and practicing physician "may be necessary and in the best interest of" the infant.

Subsequently, on March 12, 1996, DHHS filed a "Notification of Informed Consent," advising the parents that it intended to direct St. Joseph Hospital to remove the infant from the "mechanical ventilator and all extraordinary life support" systems and to "not resuscitate" her. On March 15, the mother filed a motion with the juvenile court, requesting that the court

enter an order staying DHHS from giving the instruction, which order the court granted after a hearing.

On April 29, 1996, the juvenile court held an adjudication hearing. On May 3, the court filed an order, concluding that, in accord with Neb. Rev. Stat. § 43-279.01(3) (Reissue 1993), the record established by a preponderance of the evidence that the infant was a child within its jurisdiction and that the evidence further established that it was in the infant's best interests that life support be discontinued and that the infant not be resuscitated, thereby assenting to DHHS' recommendation.

Subsequently, the mother appealed and the father cross-appealed. In an opinion dated June 20, 1997, this court reversed the juvenile court's order and remanded the cause for further proceedings, holding that the juvenile court erred in assenting to DHHS' determination to withdraw life support measures from the infant and to not resuscitate her. *Tabatha I.* This court stated that DHHS' determination to withdraw life support systems from the infant and to not resuscitate her was likely to result in the infant's death, essentially severing the relationship between the infant and the parents and was functionally equivalent to a termination of the parents' parental rights. This court held that the juvenile court had not found by clear and convincing evidence, as required, that the parents' parental rights should be terminated.

In *Tabatha I,* the evidence showed that the infant had been in the sole custody of the parents prior to her injuries and we concluded:

> Although the admissible evidence is not without conflict, we independently find, on de novo review of the record, that under any civil standard of proof, the record establishes that the infant's condition is the result of her having sustained severe brain injury as the consequence of having been vigorously shaken, not, as the parents suggest, as the result of respiratory syncytial viral disease, the method in which she was resuscitated, or any other cause.

252 Neb. at 694, 564 N.W.2d at 604.

Additionally, we noted, "Although there is some conflict in the admissible medical evidence, we independently find, on de novo review of the record, that under any civil standard of

proof, the record establishes that the infant is irreversibly comatose and in a persistent vegetative state." *Id.* at 693, 564 N.W.2d at 603.

Subsequently, the State filed a motion for rehearing, claiming that this court had not expressly ruled that the juvenile court correctly adjudged the infant to be within its jurisdiction, pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), as a juvenile lacking proper parental care by reason of the fault or habits of her parents.

In a supplemental opinion dated July 25, 1997, this court overruled the State's motion and amended its conclusion in *Tabatha I* to state:

> For the foregoing reasons, we affirm the judgment of the juvenile court that notice, service, and jurisdiction were proper and that Tabatha R. is a juvenile within the meaning of § 43-247(3)(a); but we reverse the remainder of the judgment of the juvenile court and remand the cause for further proceedings consistent with this opinion.

252 Neb. at 865, 566 N.W.2d at 782.

On June 23, 1997, after the release of our original opinion but before the filing of the mandate in the juvenile court, the juvenile court, on its own motion, set the matter for disposition.

On August 7, 1997, the State filed a motion requesting psychological evaluations of both parents, and after a hearing, the juvenile court granted the State's motion.

The dispositional phase of these juvenile court proceedings occurred in two separate hearings. It began on October 21, 1997, and it concluded in a hearing conducted on December 22. Both the parents were present in person at each of these hearings, with counsel. At the December 22 hearing, each parent appeared with an attorney guardian ad litem and each was represented by her or his trial counsel. A guardian ad litem was also present on the infant's behalf at each hearing.

Before allowing the presentation of evidence at the October 21, 1997, hearing, the juvenile court first addressed the State's suggestion that the dispositional hearing was unnecessary. Counsel for the State noted that it had filed a motion to terminate the parents' parental rights earlier that same day. In that motion, pursuant to Neb. Rev. Stat. § 43-292(5) (Reissue 1993),

the State alleged that both the parents are unable to perform their parental responsibilities because of mental illness or mental deficiency and that there are reasonable grounds to believe that these conditions will continue for a prolonged, indeterminate period. Furthermore, the State alleged, pursuant to § 43-292(1), that the father had abandoned the infant for a period in excess of 6 months immediately preceding the filing of the State's motion to terminate. The State also claimed that termination of the parents' parental rights is in the infant's best interests.

Agreeing with the objection raised by the mother's counsel, the juvenile court expressly declined to adopt the State's posture, noting, "What I don't want to get into is a situation where I don't afford the parents due process for a hearing in anticipation of evidence on a Motion to Terminate Parental Rights, the outcome of which is unknown[.]" The dispositional hearing proceeded.

Otto Burton, a case manager for DHHS, testified at both the October 21 and December 22, 1997, hearings, explaining, inter alia, the rationale for his recommendation that a rehabilitation plan not be provided for either parent. Burton testified that he had completed an assessment information and written report detailing his findings for the court, although the report was not received into evidence. Burton recommended that neither parent be reunited with the infant, and he testified that he was exploring possible options for legal guardianship or adoption of the infant. Burton also stated that while parents' desires are important, the child's best interests are his primary concern. Burton testified that throughout his experience as a case manager, he had never recommended a rehabilitation plan for parents when he knew that a motion or petition to terminate parental rights had been filed alleging mental deficiency of the parents.

At the time of the dispositional hearings, the infant remained in the condition described in *Tabatha I*, that is, in a comatose state, totally dependent on a ventilator, and requiring 24-hour nursing care. The infant's care providers had expressed additional concern to Burton regarding the size of the infant's head due to the buildup of fluid attributable to her condition. Since September 24, 1996, the infant has resided at Ambassador

Acute Care Center, a 24-hour nursing home. Burton testified that the center is able to meet the infant's extensive medical needs.

Prior to the October 21, 1997, hearing, Burton met separately with the parents to discuss their relationships with the infant. Both parents expressed to Burton a desire to regain custody of the infant, even though both at that time were living in institutional settings. The mother was imprisoned in Mitchellville, Iowa, for violating the terms of her parole from a burglary conviction in Iowa. The father was confined to the Lincoln Regional Center as a result of a judicial determination that he was not guilty of the crime of robbery by reason of insanity. The mother was paroled on October 20, the day before the first dispositional hearing. The father remained confined to the Lincoln Regional Center throughout the dispositional proceedings, although he was transported to court for both hearings. Both parents advised Burton that when and if one or both were released from an institutional setting, they planned to remain married.

Burton stated that as the infant's caseworker, he did not feel that a plan for parental rehabilitation or reunification with the infant was appropriate for either parent, and he recommended to the court that such a plan not be adopted. He testified that the basis for this belief was essentially fourfold: (1) the mother's incarceration and the father's commitment to the Lincoln Regional Center; (2) the infant's very considerable medical needs; (3) the mother's history of gravitating toward relationships with physically aggressive men, which put the safety and well-being of her children at risk; and (4) the written report and recommendations of Dr. Cynthia Topf, a psychologist who examined both parents. Topf's report was not entered into evidence at the dispositional hearing, and its contents are not subject to our review in this appeal.

Burton stated that when he formulated his recommendation that a rehabilitation plan not be adopted, he was unaware that the mother's release from the Correctional Institute for Women in Mitchellville, Iowa, was imminent. He testified, however, that her release did not change his recommendation that a rehabilitation plan not be adopted for the mother.

On cross-examination, the mother's counsel attempted to question Burton regarding the number and percentage of juvenile cases in which he had not recommended a rehabilitation plan to reunite a child with his or her parents. The juvenile court refused to allow this line of inquiry, reasoning that the facts of each juvenile case are unique and that each case must be addressed on its own merits. The juvenile court also refused to allow the mother's counsel to question Burton about who he believed caused the infant's injuries. The court's basis for this ruling was the law of the case, as announced in this court's opinion in *Tabatha I.* The father offered no evidence at either the October 21 or December 22, 1997, hearings. The mother testified on her own behalf at the December 22 hearing. She admitted that she had recently served a term of approximately 1½ years' imprisonment for violating a condition of her parole on a burglary conviction. She testified that since her release from prison, she had resided with her mother, and that she had secured employment at a dry cleaning and tailoring business. The mother testified that while in prison, she obtained her general equivalency degree (GED), and the court accepted into evidence copies of the mother's GED certificate and test scores. The mother also testified that in prison, she had taken coursework in parenting, self-esteem, family relations, "criminality," typing, and computers. She testified regarding this coursework and offered into evidence exhibits 61 through 65, which are certificates of attendance and completion for these courses. While the juvenile court allowed all of the mother's testimony regarding her accomplishments in these courses, it refused to receive the certificates into evidence. The mother testified that she wanted to regain custody of the infant and that she was willing to undergo at her own expense whatever training is necessary to care for the infant in her home.

In an order filed December 22, 1997, the juvenile court found that the infant should remain in DHHS' custody for appropriate care and placement. The court also adopted DHHS' recommendation that no rehabilitative plan be ordered for either parent. In so holding, the juvenile court noted that the parents failed to appreciate the severity of the infant's condition. The juvenile court ordered that both parents should have reasonable rights of

supervised visitation with the infant as arranged by DHHS. The court also ordered each parent to notify various persons in the event of any change of address or phone number and ordered that each parent pay an agreed-upon amount of child support for the infant. The court also noted that the motion to terminate the parents' parental rights would remain set for hearing on February 2 and 3, 1998. The mother filed a notice of appeal from the dispositional order on January 20. The father cross-appealed on January 21.

On January 13, 1998, the State filed a motion and notice in juvenile court, requesting that the juvenile court direct the Lincoln Regional Center to release the father's medical records, including all psychiatric and psychological evaluations and mental health treatment records, in light of the State's pending motion to terminate parental rights.

At the hearing on the State's motion to produce medical records pursuant to the motion to terminate parental rights, both parents requested that the court allow them to undergo independent psychiatric evaluations. In an order filed January 20, 1998, the juvenile court granted the oral motion for independent psychiatric evaluations, and in a supplemental order, filed January 26, 1998, the court ordered the Lincoln Regional Center to release the father's medical records, including all psychiatric and psychological evaluations and mental health treatment records.

The mother appeals and the father cross-appeals from the juvenile court's dispositional order of December 22, 1997, in which the juvenile court adopted the State's recommendation that the infant remain in DHHS' custody for appropriate care and placement and ordered that no rehabilitation plan be provided for either parent.

## ASSIGNMENTS OF ERROR

On appeal and cross-appeal, the parents claim that the juvenile court erred (1) by adopting DHHS' recommendation that a rehabilitation plan not be ordered for either of them and that they were denied equal protection in this regard, (2) in rendering numerous evidentiary rulings which allegedly precluded them from demonstrating that DHHS' plan or lack thereof was

not in the infant's best interests, (3) by failing to make a written determination that reasonable efforts had been made to prevent or eliminate the need for removal of the infant from her home and to make it possible for the infant to return home, and (4) by conducting the dispositional hearing in a manner which denied them due process.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Gloria F.*, 254 Neb. 531, 577 N.W.2d 296 (1998).

## ANALYSIS

*Jurisdiction and Comment on Termination-Related Orders.*

A proceeding before a juvenile court is a "special proceeding" for appellate purposes. *In re Interest of Borius H.*, 251 Neb. 397, 558 N.W.2d 31 (1997). To be appealable, the order in the special proceeding must affect a substantial right. *Id.* We conclude that in this case the juvenile court's order of December 22, 1997, declining to establish a rehabilitation plan, affects a substantial right, and is, therefore, appealable.

It is well settled that a judicial determination made following an adjudication in a special proceeding which affects the substantial rights of parents to raise their children is a final, appealable order. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997) (citing *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman, ante* p. 120, 582 N.W.2d 350 (1998)); *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987), *overruled on other grounds, State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993). More specifically, it has been held that a dispositional order imposing a rehabilitation plan for parents in a juvenile case is a final, appealable order. *In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998), citing *In re Interest of Joshua M. et al., supra.*

The law is clear that parents have a recognized liberty interest in raising their children. *In re Interest of R.G., supra* (citing *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923)). As the case now stands, the parents are precluded from raising the infant. Furthermore, the order of December 22, 1997, does not provide a plan allowing either of them to rehabilitate herself or himself or to take steps to reunite with the infant. Given the December 22 order, as well as the length of time over which the parents' parental rights may reasonably be expected to be affected, we conclude on the facts of this case that the court's December 22 order declining to order a rehabilitation plan for either parent affected a substantial right and was a final, appealable order. See *In re Interest of R.G., supra.*

On January 20, 1998, the mother filed an appeal from the court's dispositional order. On January 21, the father filed his cross-appeal from the court's dispositional order. On January 26, after both parents had filed appeals, the juvenile court filed an order requiring the Lincoln Regional Center to release the father's medical records, including all psychiatric and psychological evaluations and mental health treatment records, in preparation for the hearing on the State's motion to terminate parental rights.

However, once an appeal has been perfected to an appellate court, the trial court is divested of its jurisdiction to hear a case involving the same matter between the same parties. *In re Interest of Joshua M. et al., supra* (citing *WBE Co. v. Papio-Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995)).

In *In re Interest of Joshua M. et al.*, 251 Neb. at 626, 558 N.W.2d at 558, this court noted that "a dispositional order removing children from the care of parents and a subsequent proceeding adjudicating the termination of that parent's parental rights are both governed under the juvenile code and involve the same basic subject matter." This court specifically held that once an appeal from a dispositional order is perfected, the juvenile court loses jurisdiction to address the issue of terminating parental rights while the appeal from the disposition is pending.

In the instant case, the juvenile court had no jurisdiction to enter orders relating to the State's motion to terminate once the mother appealed the juvenile court's dispositional order. Consequently, because the juvenile court was without jurisdiction to enter orders relating to the State's motion to terminate the parents' parental rights, these orders are null and void, and accordingly, we vacate them and set them aside. See, *In re Interest of Brittany B.*, 249 Neb. 936, 546 N.W.2d 811 (1996); *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996).

*Failure to Order Rehabilitation Plan.*

On appeal, the parents contend that the juvenile court erred in failing to order a rehabilitation plan and that the court's decision to not adopt a rehabilitation plan for either of them violated their equal protection rights. The State argues that under the circumstances, the juvenile court correctly adopted DHHS' recommendation that no rehabilitation plan be ordered for either parent and that the parents' equal protection rights were not violated. After reviewing the record de novo, we conclude that the juvenile court did not err in adopting DHHS' recommendation that a rehabilitation plan not be adopted for either parent.

While Neb. Rev. Stat. § 43-285 (Cum. Supp. 1996) grants a juvenile court discretionary power over a recommendation proposed by DHHS, it also grants preference in favor of such proposal. In order for a court to disapprove of DHHS' plan, a party must prove by a preponderance of the evidence that DHHS' plan is not in the child's best interests. § 43-285; *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995). The parents failed to establish that DHHS' proposal was not in the infant's best interests.

At the dispositional hearing, Burton testified that there were several reasons why he recommended against a rehabilitation plan for either parent. Burton testified that he did not recommend a rehabilitation plan for the mother in part because of the mother's incarceration at the Correctional Institute for Women in Mitchellville, Iowa. Similarly, Burton testified that he did not recommend a rehabilitation plan for the father, first, because the father was committed to the Lincoln Regional Center at the time of the dispositional hearing, and second and more important, because the father was placed at the Lincoln Regional Center on

the basis of a plea of not guilty by reason of insanity. Burton also testified that he did not recommend a rehabilitation plan for either parent based in part on the written report and recommendations of Topf, the psychologist who examined both parents. However, because Topf's report was not entered into evidence at the dispositional hearing, we cannot review the report.

With respect to the significance of incarceration, this court has held, in the context of terminating parents' rights, that although parental rights may not be terminated solely as the result of a parent's incarceration, incarceration and the parent's consequent unavailability are factors the court may consider in deciding whether or not to terminate the parent's rights. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). We logically extend this reasoning and conclude that a parent's incarceration is a factor to consider in determining whether or not a rehabilitation plan should be adopted for that parent.

Burton further testified that he would not recommend a rehabilitation plan for the mother even though the mother had been paroled and regardless of the fact that the mother had made certain efforts while in jail to better herself. Burton noted that because of the mother's history of gravitating toward relationships with physically aggressive men, the safety and well-being of the mother's children were at risk. Additionally, Burton testified that although the mother had taken certain classes while in prison, the mother failed to present any evidence indicating that any of these classes would assist the mother in caring for the infant's extensive medical needs.

At the dispositional hearing, Burton testified that the infant remains in the condition described in *Tabatha I*, that is, in a comatose state, totally dependent on a ventilator, and requiring round-the-clock nursing care. The infant's care providers had expressed additional concern to Burton regarding the size of the infant's head due to the buildup of fluid as a result of her condition. Since September 24, 1996, the infant has resided at Ambassador Acute Care Center, a 24-hour nursing home, and Burton testified that the center is able to meet the infant's extensive medical needs. Burton testified, in effect, that given the infant's medical condition, a rehabilitation plan for the parents

which would result generally in better parenting skills suited to a child in home care would not enable the parents to meet the infant's acute medical needs.

Although the father argues that the juvenile court erred in failing to order a rehabilitation plan for him, he presented no evidence at the dispositional hearing in support of this appellate contention. Similarly, although the mother testified at the December 22, 1997, hearing and stated that she had taken certain classes while in prison, Burton testified that he was unable to state that any of these classes would enable the mother to care for the infant. We note that although the mother stated that she was willing to undergo whatever training is necessary to care for the infant in her home, the record suggests that the infant's extensive medical needs require the infant to remain in an institutional setting providing 24-hour medical care and monitoring of the infant's condition. Neither parent produced any evidence that the infant's institutional care needs were less than constant or that it would be possible for an individual in the infant's condition to live with her parents at their home. The parents did not overcome the presumption in favor of adopting DHHS' recommendation. See, § 43-285; *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995).

On appeal, the mother and, to some extent, the father argue that the juvenile court erred in not implementing a rehabilitation plan for either of them on the basis that neither had accepted responsibility for the infant's injuries. The parents claim that their equal protection rights were violated by the juvenile court's findings, holding them both responsible for the infant's injuries absent sufficient evidence to indicate that both of them, or either of them individually, actually caused or knows who caused the infant's injuries. Following our review of the record, we conclude that the parents misperceive the juvenile court's reasoning and the weight of the evidence. This assignment of error is without merit, and the parents' equal protection rights were not violated by the court's decision not to provide a rehabilitation plan for either parent.

In *In re Interest of Hollenbeck*, 212 Neb. 253, 264, 322 N.W.2d 635, 641 (1982), this court quoted *In re Interest of*

*Carlson*, 207 Neb. 540, 299 N.W.2d 760 (1980), and stated, "'[T]here is no requirement that the court must implement a rehabilitation plan for the parent of a child found to be dependent and neglected, and particularly if such a plan has very little chance of success and it would not be in the best interests of the child.'" Specifically, this court held in *In re Interest of Hollenbeck* that any rehabilitation plan the court could devise for the mother would have very little chance for success because of the mother's refusal to recognize that her daughter had been the victim of incest by the father. See, also, *State v. Duran*, 204 Neb. 546, 283 N.W.2d 382 (1979).

Similarly, after reviewing the record in the instant case de novo, we conclude that the juvenile court did not err in deciding to not order a rehabilitation plan for either parent based, in part, on the fact that neither has acknowledged or accepted the severity of the infant's injuries and the fact that the infant requires constant care in an institutional setting. Indeed, to the extent that the parents offered evidence, it was designed to show their ability to care for the infant in a home setting. This record demonstrates that the parents do not appreciate the nature and extent of the infant's injuries. Under the facts of this case, a plan would have little chance of success. On this record, there was no showing by either parent that the lack of a rehabilitation plan for either of them was not in the infant's best interests, nor was the juvenile court's order issued to force a confession by either parent as to how or by whom the infant was injured. Compare *In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998). Like the situation in *In re Interest of Hollenbeck, supra*, the parents in the instant case fail to appreciate their child's severe condition. The imposition of a rehabilitation plan in the instant case would not have served a useful purpose or been in the infant's best interests, since the infant's condition and extensive medical needs necessarily require that the infant live apart from the parents.

For the foregoing reasons, we conclude that the juvenile court did not err in declining to provide a rehabilitation plan for the parents, nor were the parents' equal protection rights violated by the dispositional order.

*Evidentiary Rulings.*

Both parents contend that the juvenile court committed reversible error, as a matter of law, through a variety of evidentiary rulings which effectively precluded them from demonstrating that DHHS' plan was not in the infant's best interests. The State argues that the juvenile court's evidentiary rulings did not constitute reversible error. We agree with the State.

We are aware that strict rules of evidence do not apply at a dispositional hearing. Neb. Rev. Stat. § 43-283 (Reissue 1993); *In re Interest of Gloria F.*, 254 Neb. 531, 577 N.W.2d 296 (1998). Even though relaxed rules of evidence may be employed, the proceedings must still be fundamentally fair. *Id.*

First, both parents argue that the juvenile court committed reversible error when it precluded them from asking Burton about who he believed caused the infant's injuries. At the dispositional hearing, the parents attempted on more than one occasion to question Burton in this regard. The State objected to such questioning on the grounds that Burton's beliefs were irrelevant and, additionally, that the issue had already been determined at the adjudication. The court sustained the State's objection on these grounds, essentially stating that the law-of-the-case doctrine precluded such an inquiry.

The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit. *Carpenter v. Cullan*, 254 Neb. 925, 581 N.W.2d 72 (1998).

In *Tabatha I*, the parents appealed the adjudication of the infant as a child described in § 43-247(3)(a) and alleged, among other things, that the juvenile court had erred in admitting certain evidence concerning the infant's medical condition, the cause thereof, and the parents' roles therein. In *Tabatha I*, this court stated,

> Although the admissible evidence is not without conflict, we independently find, on de novo review of the record, that under any civil standard of proof, the record establishes that the infant's condition is the result of her having sustained severe brain injury as the consequence of having been vigorously shaken, not, as the parents sug-

gest, as the result of respiratory syncytial viral disease, the method in which she was resuscitated, or any other cause. 252 Neb. at 694, 564 N.W.2d at 604. Based on the established facts in *Tabatha I*, the juvenile court properly sustained the State's objection.

The parents next contend that the juvenile court erred when it precluded them from eliciting testimony concerning Burton's and DHHS' treatment of other juvenile cases. This assignment of error is without merit.

At the dispositional hearing, the mother's attorney asked Burton how often he had recommended a permanency plan other than reunification in juvenile cases. The State objected on relevancy grounds, and the court sustained the State's objection, stating that it was improper to compare this juvenile case to other juvenile cases. The mother's attorney stated that he was attempting to establish that it is not a normal practice to deny a parent reunification or a chance to rehabilitate herself or himself. In an offer of proof, Burton stated that he had recommended that parents not be reunited with their child in less than one-fourth of his juvenile cases.

While we recognize that strict rules of evidence do not apply to a dispositional hearing, see, § 43-283; *In re Interest of Gloria F., supra*, in our de novo review we observe that regardless of whether or not Burton should have been permitted to comment on other cases, the exclusion of this evidence did not prejudice the parents. Although Burton was not allowed to state that he normally attempts to reunify parents with their child, Burton testified in detail as to why he declined to recommend a rehabilitation plan for either parent under the facts of this case. The juvenile court's ruling disallowing Burton's testimony regarding his treatment of other juvenile cases was harmless.

Finally, the parents contend that the juvenile court committed reversible error when it refused to admit exhibits 61 through 65, the mother's certificates of attendance and completion for prison classes, into evidence. We do not agree.

At the dispositional hearing, the mother testified that she had been in prison in Iowa on a burglary charge for the last year and a half and that while in prison she had taken several classes,

including classes in parenting, self-esteem, family relations, criminality, typing, and computers.

The mother also testified that she was awarded a certificate of completion for all these classes after passing certain tests. The mother attempted to admit these certificates, marked as exhibits 61 through 65, into evidence. The State objected to the admission of the certificates on foundation grounds, stating that there was no way to know of what these classes consisted. The court sustained the State's objection.

On appeal, the mother argues that the court should have allowed these exhibits into evidence because the admission of these exhibits would have permitted the mother to show that she had made efforts at rehabilitating herself. After reviewing the record, we conclude that regardless of whether the court erred in failing to admit exhibits 61 through 65, the mother was not prejudiced by this ruling because the mother was allowed to testify concerning the substance of these exhibits. Specifically, the mother testified that she completed these classes and that she received certificates of completion after doing so. An improper exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

The parents' assignment of error regarding evidentiary rulings is without merit.

*Reasonable Efforts to Return Infant to Her Home.*

On appeal and cross-appeal, the parents contend that the juvenile court erred in failing to make a written determination under Neb. Rev. Stat. § 43-284 (Supp. 1997) that reasonable efforts had been made to prevent or eliminate the need for removal of the infant from her home and to make it possible for the infant to return home. The State argues that the juvenile court was not required to make a finding regarding removal in this case. We agree with the State.

The relevant portion of § 43-284 provides:

> The court may enter a dispositional order removing a juvenile from his or her home only upon a written determination that continuation in the home would be contrary

to the welfare of such juvenile and that reasonable efforts have been made to prevent or eliminate the need for removal of the juvenile from his or her home and to make it possible for the juvenile to return.

In *In re Interest of L.C., J.C., and E.C.*, 235 Neb. 703, 457 N.W.2d 274 (1990), this court specifically held that the above-cited language from § 43-284 applies only to the dispositional order which initially removes the juvenile from the parental home. In the instant case, the State previously removed the infant from the parents' home and the record indicates that the parents did not object. The instant order is not one of initial removal, but, rather, it continues out-of-home placement. Therefore, this assignment of error is without merit.

*Due Process.*

The parents claim that the manner in which the juvenile court conducted the dispositional hearing and the juvenile court's decision not to order a rehabilitation plan for either of them denied them due process. After reviewing the record de novo, we conclude that the parents' due process rights were not violated, either by the manner in which the juvenile court conducted the dispositional hearing or by the court's decision to not order a rehabilitation plan.

The substance of the parents' due process argument has been treated in this opinion in connection with our affirmance of the trial court's various orders, including its refusal to order a rehabilitation plan and its evidentiary rulings, and we conclude the parents received due process at the disposition hearing. This assignment of error is without merit.

## CONCLUSION

Following our de novo review of the record, we vacate and set aside the juvenile court's January 26, 1998, order requiring the Lincoln Regional Center to release the father's medical records, and we affirm the juvenile court's December 22, 1997, dispositional order directing that the infant remain in DHHS' custody for appropriate care and placement and adopting DHHS' recommendation that no rehabilitation plan be ordered for either parent.

AFFIRMED IN PART, AND IN PART
VACATED AND SET ASIDE.

WRIGHT, J., concurring.

On January 22, 1996, Tabatha R. arrived at St. Joseph Hospital in full cardiac and pulmonary arrest. The infant is irreversibly comatose and in a persistent vegetative state. In *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997) (*Tabatha I*), we independently found on de novo review that the infant's condition occurred as the result of her having sustained severe brain injury as a consequence of having been vigorously shaken. In my concurrence in *Tabatha I*, I stated that there are factual situations in which only one act by a parent is sufficient to provide the basis for termination of parental rights under Neb. Rev. Stat. § 43-292 (Reissue 1993).

In *Tabatha I*, we concluded that the order entered by the juvenile court was, in effect, a termination of parental rights and that before such rights could be terminated, Neb. Const. art. I, § 3, required that the evidence clearly and convincingly establish the existence of one or more of the statutory grounds stated in § 43-292 and that such action was in the infant's best interests.

In my opinion, following our decision in *Tabatha I*, the State could have filed a motion to terminate parental rights. The State did not file such a motion until the day of the dispositional hearing, and therefore, the juvenile court properly refused to consider the termination issue.