758 N.W.2d 48 (2008)
17 Neb. App. 203
In re INTEREST OF SARAH L. et al., children under 18 years of age.
State of Nebraska, Appellee,
v.
Mitchell D., Appellant.
No. A-08-196.
Court of Appeals of Nebraska.
November 10, 2008.
*49 John C. Ball, of Pollack & Ball, L.L.C., for appellant.
Gary Lacey, Lancaster County Attorney, and Alicia B. Henderson, for appellee.
IRWIN, SIEVERS, and CARLSON, Judges.
IRWIN, Judge.

I. INTRODUCTION
Mitchell D. appeals an order of the juvenile court review panel, which order reversed an order of the separate juvenile court disapproving of the plan proposed by the Department of Health and Human Services (DHHS). On appeal, Mitchell asserts that the review panel erred in reversing the juvenile court's disapproval of the proposed plan. Mitchell failed to present any evidence to rebut the preference given to DHHS' proposed plan. Mitchell failed to prove by a preponderance of the evidence that the proposed plan was not in the best interests of Mitchell's child and stepchildren. The review panel did not err in reversing the juvenile court's order implementing a plan different from that *50 proposed by DHHS. Accordingly, we affirm.

II. BACKGROUND
On October 20, 2006, the separate juvenile court of Lancaster County, Nebraska, entered an adjudication order concerning Mitchell and the minor children, Sarah L., Brandon D., and Caleb L. Mitchell entered an admission to allegations in an amended petition which was not requested or provided in the appellate record. The adjudication order sets forth the following relevant factual background and basis for the adjudication:
The allegations of the Amended Petition are true by the preponderance of evidence. Sarah L[.], born October 11, 1994, Brandon D[.], born December 1, 1997, and Caleb L[.], born December 24, 1992, are the children of Ms. Janelle D[.] and child and step-children of Mr. Mitchell D[.] Said children are found in Lancaster County, Nebraska, in the custody of Ms. Janelle D[.], and Mr. Mitchell D[.] While in the custody of Ms. Janelle D[.] and Mr. Mitchell D[.], said children are without proper support through no fault of their parents, Mitchell and Janelle D[.], in that: in 1999 Mitchell D[.] attempted to have sexual contact, with his adolescent niece. In 1999, Janelle D[.] was aware of the allegation of attempted sexual contact by Mitchell D[.] on his adolescent niece, and Janelle D[.] placed said children out of the home so that Mitchell D[.] could stay at her residence without violating a no-contact provision that was ordered by the county court. On or about June 1, 1999, Janelle D[.] became frustrated and angry about the attempted sexual contact by Mitchell D[.] with his niece, and spanked Caleb L[.], leaving bruises. On or about June 2, 1999, Janelle D[.] contacted [DHHS] and requested that they remove the children from her home. Between June and September of 2006, Sarah L[.] reported that Mitchell D[.] had subjected her to inappropriate sexual contact. On October 5, 2006, Sarah [L.] reported that she had not told the truth about all of the allegations she had made of inappropriate sexual contact, but still reported that she was touched by Mitchell D[.] inappropriately on her inner upper thigh on one occasion. On or about June 28, 2006, Janelle D[.] became aware that Sarah L[.] had alleged that Mitchell D[.] had subjected Sarah L[.] to inappropriate sexual contact. Due to a lack of confidence in Sarah L[.]'s credibility, Janelle D[.] was not supportive of Sarah L[.], and demonstrated that lack of support to Sarah L[.] and others. The fact that Sarah L[.] made these allegations of inappropriate sexual contact by Mitchell D[.], and then recanted most of them, and the fact that Janelle D[.] failed to believe Sarah L[.]'s original allegations of inappropriate sexual contact made the entire family in need of therapeutic intervention to address, among other issues, the truth of the allegations, and to establish appropriate safety plans and appropriate boundaries in the family.
On August 10, 2007, the juvenile court held a review hearing. At that hearing, the court received the court report prepared by DHHS. The court report included DHHS' plan and recommendations toward the permanency plan of reunification, which plan and recommendations included that Mitchell should be ordered to follow the recommendations of an updated risk assessment as arranged by DHHS.
The risk assessment, prepared by Dr. Mary Paine, specifically recommended that Mitchell undergo a penile plethysmograph (PPG). According to Dr. Paine in the risk assessment, the PPG would be the "single best predictor" of Mitchell's risk to *51 recidivate and would provide solid physiological data regarding the nature and strength of Mitchell's arousal to a variety of visual and auditory sexual stimuli. Dr. Paine further indicated in the risk assessment that the specific PPG machine available to her, the "Monarch 21," is an "FDA approved instrument" which is grounded in research with standardized test procedures and uses "ethical stimuli that are not pornographic."
Mitchell objected to being ordered to undergo the PPG and indicated to the court that he believed he had "a right to a Daubert hearing on that," because it was "a brand new test" and there was not "any scientific, academic, any literature on it at all." Mitchell requested that the court "at the very least ... withhold its order ordering the PPG until [the court could conduct a] Daubert hearing." At the conclusion of the hearing, the court indicated that it was "not clear on the Daubert issue" and that it also believed that "there are due process issues that may be raised ... that would require additional evidence ... regarding... the PPG." The court continued the review hearing.
On October 12 and 26, 2007, the juvenile court completed the review hearing and received live testimony from Dr. Paine concerning the PPG. Initially, there was disagreement between the parties regarding who should bear the burden concerning the propriety of the court's ordering of the PPG. The State argued that the PPG was part of the DHHS plan and that therefore Mitchell should bear the burden of proving that the plan is not in the best interests of the children. Mitchell argued that the State was the proponent of "evidence subject to scientific and reliability and ... general relevance principles" and that the burden should be on the State to prove the evidence admissible. The State noted that it was not actually offering any evidence or results, but was seeking to have a test included in a rehabilitation and treatment plan. The court did not resolve the dispute, but directed the State to call and question Dr. Paine.
Dr. Paine testified that she was recommending the PPG for assessment purposes and as an adjunct to treatment. She testified that the PPG is the only test involving physiological responses as opposed to psychological responses. With respect to the Monarch 21 PPG machine, Dr. Paine testified that the Monarch 21 had been "very widely researched" and developed to address deficiencies in early PPG machines and that the Monarch 21 is "an empirically based instrument, standardized test, with very explicit scoring instructions that are empirically based." Dr. Paine also testified that she had to complete a weeklong intensive training program and be certified to administer the Monarch 21 and that the standardization of the administration and interpretation of test results should result in the ability of anyone else who has been trained in its use to reach the same conclusions when interpreting the test results. Additionally, she testified that when she performs a test, she sends the test results to the two doctors who developed the test to confirm her findings and offer additional input.
Dr. Paine testified about studies done and technical statistical formulas developed to improve the reliability of the Monarch 21 PPG test. She testified that the Monarch 21 incorporates additional safeguards to minimize false positives and false negatives, including "a respiratory trace and a galvanic skin response."
Dr. Paine explained that the PPG is used to assess what stimuli an individual has a sexual response to based on reactions to images depicting people in various situations. The PPG measures sexual responses and relates them to the age of the *52 subject depicted, the gender of the subject depicted, and the type of situation depicted.
Dr. Paine testified that the PPG can be a useful tool because it provides evidence of subconscious matters and can assist an individual in understanding underlying physiological impulses and in measuring progress, as well as in specifying clinical needs. She stressed that the PPG test cannot be used in isolation, but should be a part of a complete assessment and treatment program. She also testified that she does not believe the PPG should be used as substantive evidence of guilt or innocence in a criminal setting or as substantive evidence in a civil setting, but that it can be a significant factor in determining appropriate treatment.
After the court finished receiving evidence and hearing testimony at the October 26, 2007, hearing, Mitchell objected to the recommendation that he undergo the PPG. Mitchell noted that a number of state and federal courts have refused to allow admission of PPG test results as evidence and argued that "[f]or the absolute liberty interest, the privacy issues, I mean, this test makes a body cavity search look like a Hallmark moment here." Mitchell argued that the State had failed to satisfy the "Schafersman standard" to "get to admissible evidence" and argued that there was not sufficient evidence of general acceptance within the scientific community or standardization. The State, in response, again noted that it was not "asking that this evidence come in to court to prove a fact toor a non-fact" and noted that the issue was "simply whether or not [Mitchell] should be required to submit to this test as a condition of that sex offender treatment" and "as a tool to aid the Court in determining what is in this child's best interest."
At the conclusion of the hearing, the juvenile court specifically disapproved of the plan of DHHS. The court specifically indicated that it would not order Mitchell to participate in the PPG. On October 29, 2007, the court entered a disposition order that did not include a requirement that Mitchell participate in the PPG.
DHHS appealed the juvenile court's disposition order to the juvenile review panel pursuant to Neb.Rev.Stat. § 43-287.04 (Reissue 2004). On February 6, 2008, the review panel entered an order finding that the juvenile court's order not requiring Mitchell to participate in the PPG was not in the best interests of Sarah. The review panel remanded the case to the juvenile court with directions to order Mitchell to participate in the PPG. This appeal followed.

III. ASSIGNMENT OF ERROR
The only assignment of error is that the review panel erred in overturning the trial court's decision.

IV. ANALYSIS
The issue raised in this appeal is whether the review panel erred in reversing the juvenile court's decision to implement a plan which differed from the plan proposed by DHHS. Our review of the record indicates that Mitchell presented no evidence to the juvenile court to prove by a preponderance of the evidence that DHHS' plan was not in the children's best interests. We conclude that the review panel did not err in reversing the juvenile court's decision.
The purpose of the juvenile code is to assure the rights of all juveniles to care and protection and a safe and stable living environment and to development of their capacities for a healthy personality, physical well-being, and useful citizenship and to protect the public interest. Neb. *53 Rev.Stat. § 43-246(1) (Reissue 2004); In re Interest of Vincent P., 15 Neb.App. 437, 730 N.W.2d 403 (2007). The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of juveniles who fall within it. In re Interest of Vincent P., supra.
Neb.Rev.Stat. § 43-285(2) (Reissue 2004) allows the court to order a proposed plan for the care, placement, and services which are to be provided for a juvenile adjudged as being within the ambit of Neb.Rev.Stat. § 43-247(3) (Cum.Supp. 2006). In re Interest of Vincent P., supra. While § 43-285 grants a juvenile court discretionary power over a recommendation proposed by DHHS, it also grants preference in favor of such proposal. In re Interest of Tabatha R., 255 Neb. 818, 587 N.W.2d 109 (1998). For the juvenile court to disapprove of DHHS' proposed plan, a party must prove by a preponderance of the evidence that DHHS' plan is not in the child's best interests. Id.
In the present case, Mitchell presented no evidence at trial that the proposed plan was not in the best interests of the children. As detailed above in the background section, DHHS presented evidence concerning the plan and why it was in the best interests of the children. Mitchell objected to the PPG portion of the plan, not on the basis of the best interests of the children, but on the basis that the test results might not be admissible as substantive evidence at some future hearing. DHHS was not attempting to offer any test results as substantive evidence, and Mitchell failed to satisfy his burden to demonstrate that the plan proposed by DHHS was not in the best interests of the children and should have been disapproved. Additionally, the juvenile court made no specific findings to indicate why it was disapproving of the plan.
We express no opinion on the PPG test, its reliability, or the potential admissibility of PPG test results as substantive evidence in a juvenile proceeding. Those issues are not before us, because the issue raised in this appeal is more properly limited to whether Mitchell satisfied his burden to support the juvenile court's disapproval of the plan proposed by DHHS and implementation of a plan differing from that proposed by DHHS. Despite Mitchell's attempts to argue below that the burden should have been on DHHS to prove admissibility of the test results, the burden was on Mitchell to rebut the preference given to the DHHS plan. In this case, Mitchell failed to satisfy his burden and the review panel properly reversed the juvenile court's decision.
Finally, we note that Mitchell's sole assignment of error on appeal is that the review panel erred in reversing the juvenile court's decision. In addition to raising a number of evidentiary objections to the PPG test, Mitchell also raises constitutional objections based on substantive due process and the Fourth Amendment. We conclude that these issues were not sufficiently raised below to necessitate our further discussion on appeal. See In re Interest of Anthony V, 12 Neb.App. 567, 680 N.W.2d 221 (2004) (appellate court will not consider constitutional question on appeal that was not raised and properly presented for disposition by trial court).

V. CONCLUSION
Mitchell failed to present any evidence to rebut the preference given to DHHS' proposed plan. Mitchell failed to prove by a preponderance of the evidence that the proposed plan was not in the best interests of the children. The review panel did not err in reversing the juvenile court's order *54 implementing a plan different from that proposed by DHHS. We affirm.
Affirmed.