IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF AIYAUNA Y. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF AIYAUNA Y. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

MELVIN Y., APPELLANT.


Filed March 24, 2020.    No. A-19-668.


Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH G. CRNKOVICH, Judge. Affirmed.

Maureen K. Monahan for appellant.

No appearance for appellee.


MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Following the entry of Douglas County Separate Juvenile Court orders adjudicating the minor children as falling within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), and finding that the permanency goal for the minor children was guardianship, Melvin Y. now appeals from the order establishing a guardianship for his three minor children with their maternal grandmother. Melvin argues that the court failed to provide him with the opportunity to reunify in accordance with the parental preference principle and violated due process for failing to record certain proceedings. For the reasons set forth herein, we affirm.

- 1 -

STATEMENT OF FACTS

Aiyauna Y., Ariyonna Y., and Aloynia Y. (hereinafter referred to as the "minor children") are the biological children of Melvin and Camisha H. On April 3, 2018, the State filed a petition, along with a motion for immediate custody, alleging the minor children came within the meaning of § 43-247(3)(a) because two days earlier, the minor children disclosed that their parents were involved in a severe fight; that when the minor children woke in the morning, they could not locate their parents; that evidence in the home indicated there had been a physical assault with significant injuries; that law enforcement could not locate Camisha; that Melvin had been arrested and refused to provide details as to Camisha's location; that Melvin was currently incarcerated; and that there was risk of harm to the minor children. That same day, the juvenile court entered an immediate temporary custody order. Following a hearing in which Melvin did not appear and Camisha could still not be located, the juvenile court entered a protective custody order on April 11.

An adjudication hearing was held on August 14, 2018. Following the adjudication hearing, the juvenile court entered an order finding, by a preponderance of the evidence, that the minor children were children within the meaning of § 43-247(3)(a) and that the minor children

> should remain in the temporary custody of the Nebraska Department of Health and Human Services for appropriate care and placement . . . That this matter should be set for Disposition and Permanency Planning hearing with a predisposition investigation to be conducted by the Nebraska Department of Health and Human Services and the Guardian ad Litem[.]

In support of said adjudication, the juvenile court indicated that "[e]vidence located at the home lends to a conclusion that there were signs of 'foul play' to include spent gun shells and drops of blood" and that "[Melvin] was interviewed and provided no details as to [Camisha]'s location."

On September 5, 2018, the guardian ad litem (GAL) filed a "Motion for First Court Meeting" requesting that "movant prays the Court for a FIRST Court meeting for conversations regarding therapeutic services for the minor children" and "[t]hat it would be in the best interest of the minor children for a FIRST Court meeting to be held."

On September 20, 2018, the juvenile court held a disposition and permanency planning hearing. On September 21, the juvenile court entered an order documenting that both Melvin and his counsel were present, the juvenile court received evidence, the juvenile court took the permanency plan under advisement, and the juvenile court would hold a "F.I.R.S.T. Court Check Hearing . . . on October 31, 2018[.]"

On November 7, 2018, the juvenile court entered a "Check Order" stating, "This matter came on for a F.I.R.S.T. Court Check Hearing on the 31st day of October, 2018." After documenting the attendees, including Melvin's counsel, the juvenile court ordered that "a F.I.R.S.T. Court Team Meeting, as to [Melvin], will be held on December 5, 2018" and "a Juvenile Review and Permanency Planning Hearing, as to [Melvin], will be held on March 6, 2019[.]" On December 5, the juvenile court entered an order stating, "The Court finds that a F.I.R.S.T. Court Team Meeting, as to [Melvin], will be held on January 16, 2019." The court's January 17, 2019, order following this meeting documented the presence of Melvin's counsel and scheduled the next meeting for February 20 which was later continued to March 20.

On March 20, 2019, the juvenile court held a combined F.I.R.S.T. Court Team Meeting, juvenile review, and permanency planning hearing. Again, Melvin's counsel was present along with numerous other attendees and the court received evidence. The following day, the juvenile court entered an order finding, in relevant part:

> [T]he permanency objective is guardianship . . . . [R]easonable efforts have been made to return the minor children to the parental home and to finalize permanency to include but not limited to placement, individual therapy, evaluations, family team meetings, and case management, as set forth in the Nebraska Department of Health and Human Services Case Plan and Court Report, Exhibit 24[.]

Melvin did not appeal from this order.

Following that order, on May 8, 2019, the State filed a Motion to Establish Guardianship through Alternate Disposition. In that motion, the State alleged that the minor children had been residing with their maternal grandmother since April 3, the minor children had done well in her care, the minor children's maternal grandmother was a fit and suitable person to serve as the minor children's guardian, and that further efforts to reunify were not required since that would be contrary to the permanency plan of guardianship as set forth in the court's March 21 order. On June 13, the juvenile court entered an order appointing the minor children's maternal grandmother to serve as guardian. It is from this order that Melvin appeals.

## ASSIGNMENTS OF ERROR

Melvin's assignments of error, restated and renumbered, are that the juvenile court erred in (1) establishing the guardianship without giving Melvin either a plan to rehabilitate himself or an opportunity to fulfill such plan for the sole reason he was incarcerated pretrial and failing to consider the parental preference principle and (2) holding "F.I.R.S.T. Court Team Meetings" and hearings in which no verbatim record was made thus violating Melvin's right to due process.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Robert W.*, 27 Neb. App. 11, 925 N.W.2d 714 (2019). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016); *In re Interest of Becka P.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

## ANALYSIS

### ESTABLISHMENT OF GUARDIANSHIP

Melvin first assigns the parental preference principle applies to a guardianship under Neb. Rev. Stat. § 43-1312.01 (Reissue 2016) and the juvenile court erred in ordering a guardianship without any opportunity for him to rehabilitate himself as he was incarcerated, pretrial, without the ability to pay bond. The thrust of Melvin's argument here is that the juvenile court entered a guardianship order without first giving him a chance to rehabilitate himself without evidence establishing he was unfit or that the parental preference principle should not be followed. However,

Melvin is making these arguments following the order that resulted in the actual appointment of the minor children's guardian.

As Melvin himself acknowledges, the juvenile court held a dispositional hearing in September 2018 to determine, among other things, a permanency plan for the minor children. At that hearing, counsel for the Nebraska Department of Health and Human Services (DHHS) stated, "Given the father's current status of being incarcerated, there aren't a lot of services that we can offer to him at this time, which is why there are not any services that are being recommended for him." After Melvin's acknowledgement that he was waiting for trial, the juvenile court noted that, based upon the uncertainty of Melvin's situation, the juvenile court would take the issue of permanency under advisement. Some six months later, during the March 20, 2019, hearing, the juvenile court indicated that Melvin "does not have to consent to a guardianship. But I don't see how we can have any plan of reunification. And it is the unknown that makes that impossible." In its March 21 order, the juvenile court then adopted the permanency plan of guardianship over Melvin's objection.

Melvin did not appeal from the March 21, 2019, order, which, in conjunction with the court's statements at the hearing, firmly established there would be no plan of reunification and the permanency plan was that of guardianship. See *In re Interest of Octavio B. et al.,* 290 Neb. 589, 598, 861 N.W.2d 415, 423 (2015) (in which the Nebraska Supreme Court found the court's statements from the bench "essentially eviscerated the opportunity to achieve reunification"). Melvin failed to appeal within thirty days of that order. Instead, Melvin waited until the juvenile court appointed a guardian in June 2019, following the State's motion to appoint a guardian in May, and now appeals from that appointment order arguing the juvenile court failed to provide him with an opportunity and plan for reunification and failed to establish that he was unfit before making that determination.

In *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998), the court adjudicated an infant, who was comatose and in a persistent vegetative state, as to be within its jurisdiction, pursuant to § 43-247(3)(a). In connection therewith, the court found that under any civil standard of proof, the record established the infant's condition was the result of her having sustained severe brain injury as the consequence of having been vigorously shaken. *Id.* Prior to dispositional hearing, a case manager met with both parents to discuss their relationship with the infant. *Id.* Both parents expressed a desire to regain custody even though both were in institutional settings; the mother in prison and the father confined to the Lincoln Regional Center due to a judicial determination that he was not guilty of a crime by reason of insanity. *Id.* The caseworker recommended that a parental rehabilitation plan not be adopted, even though there was testimony at the dispositional hearing that the mother's release was imminent. *Id.* Following the hearing, the court ruled the infant should remain in DHHS custody for appropriate care and placement and ordered that no rehabilitative plan be ordered for either parent. *Id.* The mother appealed and the father cross appealed. *Id.* In finding that the court's dispositional order was a final order and subject to appeal, the Supreme Court held:

> A proceeding before a juvenile court is a "special proceeding" for appellate purposes. *In re Interest of Borius H. et al.*, 251 Neb. 397, 558 N.W.2d 31 (1997). To be appealable, the order in the special proceeding must affect a substantial right. *Id*. We

conclude that in this case the juvenile court's order of December 22, 1997, declining to establish a rehabilitation plan, affects a substantial right, and is, therefore, appealable.

*In re Interest of Tabatha R.*, 255 Neb. at 827, 587 N.W.2d at 116. In support of its conclusion, the Supreme Court stated:

> The law is clear that parents have a recognized liberty interest in raising their children. *In re Interest of R.G.*, *supra* (citing *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923)). As the case now stands, the parents are precluded from raising the infant. Furthermore, the order of December 22, 1997, does not provide a plan allowing either of them to rehabilitate herself or himself or to take steps to reunite with the infant. Given the December 22 order, as well as the length of time over which the parents' parental rights may reasonably be expected to be affected, we conclude on the facts of this case that the court's December 22 order declining to order a rehabilitation plan for either parent affected a substantial right and was a final, appealable order[.]

*In re Interest of Tabatha R.*, 255 Neb. at 828, 587 N.W.2d at 117.

The same holds true here. The juvenile court held a full dispositional hearing in September 2018 and took the matter of the permanent plan involving Melvin under advisement due, in part, to Melvin's incarceration and the uncertainty associated with his upcoming trial. However, during the March 20, 2019, hearing, the juvenile court stated that it opted against a plan of reunification and ordered a permanent plan of guardianship based upon additional evidence received through that date. That determination, which directly addressed the assignment of error Melvin attempts to assert now, was a final, appealable order issued by the juvenile court on March 21. As to the permanent plan of guardianship, the June 13 order constituted a mere repetition of the essential terms of the March 21 order with respect to that issue. Accordingly, there were not such changes in the permanency plans between the two orders as to create a final, appealable order as to that specific issue in June 2019.

Melvin failed to appeal within thirty days of the March 21, 2019 order. As we have often stated:

> In order to vest an appellate court with jurisdiction, a notice of appeal must be filed within 30 days of the entry of the final order; if a party fails to timely perfect an appeal of a final order, he or she is precluded from asserting any errors on appeal resulting from that order.

*In re Interest of Shane L. et al.*, 21 Neb. App. 591, 600, 842 N.W.2d 140, 148 (2013). See Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2018).

We further note Melvin acknowledges that the juvenile court's guardianship order of June 13, 2019, was entered in accordance with § 43-1312.01 (Reissue 2016). Section 43-1312.01 provides in part:

> (1) If the permanency plan for a child established pursuant to section 43-1312 does not recommend return of the child to his or her parent or that the child be placed for adoption, the juvenile court may place the child in a guardianship in a relative home as

defined in section 71-1901, in a kinship home as defined in section 71-1901, or with an individual as provided in section 43-285 if:

(a) The child is a juvenile who has been adjudged to be under subdivision (3)(a) of section 43-247;

(b) The child has been in the placement for at least six months;

(c) The child consents to the guardianship, if the child is ten years of age or older; and

(d) The guardian:

(i) Is suitable and able to provide a safe and permanent home for the child;

(ii) Has made a commitment to provide for the financial, medical, physical, and emotional needs of the child until the child reaches the age of majority or until the termination of extended guardianship assistance payments and medical care pursuant to section 43-4511;

(iii) Has made a commitment to prepare the child for adulthood and independence; and

(iv) Agrees to give notice of any changes in his or her residential address or the residence of the child by filing a written document in the juvenile court file of the child.

Accordingly, the issues Melvin seeks to appeal following the juvenile court's June 13 order were decided by the juvenile court in its March 21 order, and Melvin does not assert errors that were matters for the court's consideration in connection with an order granting guardianship as defined in § 43-1312.01. This first assignment of error fails.

F.I.R.S.T. COURT

Melvin next assigns the juvenile court erred in holding F.I.R.S.T. Court Team Meetings and hearings in which no verbatim record was made thus violating Melvin's rights to due process. In connection with this assignment, Melvin asserts his case was randomly selected for a pilot project termed "F.I.R.S.T. Court" with Judge Crnkovich. He argues that no record of the F.I.R.S.T. Court proceedings are available even though he requested them in the bill of exceptions. Melvin indicates that these proceedings took place on October 31 and December 5, 2018, and January 17, 2019. Melvin notes there are notices and orders from these proceedings, but that apparently no verbatim record was made. Because there is no record of these proceedings, it is unclear what specifically took place during the proceedings. Melvin argues that by reviewing the orders entered following the proceedings on those dates, one can glean that they should be considered "de facto review hearings." Melvin then cites to *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004), in arguing that courts are required to create a verbatim record of all proceedings, and the failure to conduct hearings on the record in *In re Interest of Mainor T. & Estela T.* was found by the court to be fundamentally unfair, denied the mother due process, and was plain error. As to his case, Melvin then argues:

The F.I.R.S.T. court team meetings occurred while the Court was taking the permanency plan under advisement per the Disposition Hearing and Order. The lack of a full verbatim record of the judicial proceedings that lead to this guardianship orders [sic] deprives the Father of his right to a de novo review of the record and for the appellate court to make

- 6 -

independent conclusions. It is plain error and deprives the Father of his right to [d]ue process. Therefore, any court proceeding or order post the initial F.I.R.S.T. Court team meeting is tainted. This includes the Review order adopting Guardianship as the plan and the Guardianship Order itself.

Appellant's brief at 22-23.

Contrary to Melvin's argument, the Supreme Court in *In re Interest of Mainor T. & Estela T.*, 267 Neb. at 254-55, 674 N.W.2d at 462, held:

The praecipe for the bill of exceptions filed by Mercedes requests "all evidence, including testimony and exhibits offered at the hearings conducted in this matter on or about March 23, 2001 through June 27th, 2002." Rather, this appeal presents us with an inadequate record due to the court's failure to conduct **evidentiary hearings** when such were required by due process and statute. See, § 43-1313; *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991); *In re Interest of J.S., A.C., and C.S., supra*.

(Emphasis supplied.) There the court's statements governing failures in connection with conducting hearings on the record dealt specifically with evidentiary hearings. That is consistent with Neb. Ct. R. § 2-105 which provides in part:

(A) Making and Preserving Record.

(1) "Court reporting personnel," as defined in Neb. Ct. R. § 1-204(A)(1), shall in all instances make a verbatim record of the evidence offered at trial or other evidentiary proceeding, including but not limited to objections to any evidence and rulings thereon, oral motions, and stipulations by the parties. This record may not be waived.

(2) Upon the request of the court or of any party, either through counsel or pro se, court reporting personnel shall make or have made a verbatim record of anything and everything said or done by anyone in the course of trial or any other proceeding, including, but not limited to, any pretrial matters; the voir dire examination; opening statements; arguments, including arguments on objections; any motion, comment, or statement made by the court in the presence and hearing of a panel of potential jurors or the trial jury; and any objection to the court's proposed instructions or to instructions tendered by any party, together with the court's rulings thereon, and any posttrial proceeding.

Accordingly, a verbatim record is only required, without request, in connection with an evidentiary proceeding. Melvin fails to specify what in the juvenile court's F.I.R.S.T. Court Team Meetings consisted of evidentiary proceedings, and the orders issued in connection provide no indication that these were evidentiary proceedings. We also note Melvin acknowledged service in connection with these proceedings and the orders indicate Melvin's counsel attended these meetings but fails to suggest his counsel requested a record of these proceedings as contemplated by § 2-105(A)(2).

What is clear from Melvin's argument is that he believes he has the right to contest the findings in the juvenile court's March 21, 2019, order that established guardianship as the permanency goal and attempts to tie those unrecorded court proceedings to that March order by

claiming they might have had an impact on that order. As we stated in the previous section of this opinion, the March 21 order establishing the permanency goal was a final order from which Melvin failed to appeal and Melvin is now precluded from assigning error in connection therewith. As we further stated, the June 13 order was limited to the juvenile court's determination of factors set forth in § 43-1312.01, having previously made its permanency determination on March 21 in accordance with Neb. Rev. Stat. § 43-1312 (Reissue 2016). As such, the juvenile court's June 13 order was limited to findings in connection with the elements of § 43-1312.01. Melvin assigns no error in connection with any specific element of § 43-1312.01 and instead ties his appeal to findings relating only to the March 21 order. Because Melvin is foreclosed from raising issues in connection with the March 21 order, this assignment of error likewise fails.

## CONCLUSION

For the reasons stated above, we affirm the juvenile court's order.

AFFIRMED.